ESTHER STIGALL *v.* ORIEN STIGALL.

[No. 971A177. Filed February 2, 1972.]

*James H. Voyles, Charles W. Symmes, Symmes, Fleming, Ober & Symmes,* of Indianapolis, *Melvin Richards, Castor & Richards,* of Noblesville, for appellant.

*M. Daniel Friedland, Yockey & Yockey,* of Indianapolis, for appellee.

LOWDERMILK, J.—This action was instituted by the plaintiff-appellant against her husband, wherein she prayed for a divorce, suit money and restraining order on June 17, 1970. The defendant-appellee filed a cross-complaint for divorce on June 29, 1970, and the matter came on for trial before a Judge Pro Tempore of the Marion Superior Court, Room 2.

Following this portion of the trial of the cause defendant-appellee and plaintiff-appellant, by and through new counsel for plaintiff-appellant, stipulated on February 3, 1971, that all the evidence presented on December 16, 1970, before the Judge Pro Tempore was one and the same evidence being heard by the Honorable Wilbur H. Grant, the regular judge of Superior Court, Room 2.

The parties further stipulated that additional evidence may be presented as it pertains only to the assets accumulated during the married life of the parties in connection with any property settlement that may be made in the cause.

This stipulation, together with another stipulation of counsel, preceded the additional hearing which was held concerning the assets of the parties before Judge Grant.

Thereafter, on March 11, 1971, plaintiff-appellant filed her brief with Judge Grant concerning the issues of the property distribution between the parties and on March 12, 1971, filed her tentative special findings of fact and conclusions of law.

Thereafter, on March 25, 1971, defendant-appellee filed with the court his brief concerning the issues of property between the parties and also filed his tentative special findings of fact and conclusions of law.

On April 14, 1971, the court duly entered its judgment, together with special findings of fact and conclusions of law thereon, which, in the interests of brevity, are summarized as follows.

The court found the allegations of plaintiff's complaint were true and granted her an absolute divorce from the defendant.

The court found adequate residence requirements had been met.

On these findings the court entered judgment of absolute divorce.

The court further decreed that the parties had acquired certain personal property and real estate during their marriage and a division of the same and a set-off of the same should be that:

The plaintiff have set off to her as her sole and separate property:

"(1) All right, title and interest in and to the Savings and Profit Sharing Pension Fund, Sears, Roebuck & Company, (as of December 31, 1969 statement placed in evidence February 24, 1971), having a value of Two Thousand Six Hundred Forty-two Dollars and Ninety-five Cents ($2,642.95) (cash), and approximately One Hundred Fifty-four (154) shares of Sears, Roebuck & Company stock which are listed on the New York Stock Exchange with

the value as of April 12, 1971, of Eighty-nine Dollars and Twenty-five Cents ($89.25) per share, having a value of Thirteen Thousand Seven Hundred Forty-four Dollars and Fifty Cents ($13,744.50)";

All household furnishings and effects formerly located in the residence of the parties at 4547 Tincher Road, Indianapolis, and which plaintiff-appellant at that time had in her possession, by agreement, was her separate property. However, certain tools formerly located at the Tincher Road residence were excepted from the award to her and remained the property of the defendant-appellee.

The court further decreed that the defendant-appellee was to receive as his sole and separate property a 1969 Ford LTD 4-door hardtop automobile in his possession and which the parties had agreed to be of the value of $2,000, as was the agreed value of the household furnishings.

The real estate located at 4547 Tincher Road, which was owned by the parties as tenants by the entireties, was decreed to be the sole and separate property of the defendant-appellee and plaintiff-appellant was ordered to transfer by quitclaim deed all her right, title and interest in and to said real estate to the defendant forthwith. Taxes on the real estate for the year 1969, payable in 1970, and all subsequent taxes on said real estate were made the obligation of the defendant-appellee.

The court decreed that the parties were the joint owners of certain items of personal property and that George M. Ober was trustee thereof and that said property consisted of the following:

40 United States Series E Bonds of the value of $2,000.

$1,017.45, being the balance of funds on deposit in a joint checking account of the parties at Citizens Bank of Mooresville, Indiana, which was then being held by George M. Ober, Trustee, at the Indiana National Bank, Indianapolis.

Approximately $5,000, representing two certificates of deposit, numbered 63153 and 63155, in the amount of $2,500 in

the joint names of the parties, plus accrued interest on said certificates of deposit with the Citizens Bank of Mooresville and which funds were now in the account of said George M. Ober as Trustee at the Indiana National Bank, Indianapolis.

The sum of $1,232.12, being the joint checking account of the parties at the Indiana National Bank, Indianapolis, which funds are in the account of George M. Ober, Trustee, and the sum of $12,267.95 plus accrued interest thereon which is a joint savings account in the names of each of the parties with the funds in the Indiana National Bank, George M. Ober, Trustee.

The court further decreed that all of said items owned by the parties jointly or which were in the name of George M. Ober, Trustee checking account, be, and the same were, ordered divided and severed between the parties equally so that each should share in the property equally and each equal share shall be the property and estate of each party respectively.

The court further decreed that George M. Ober, Trustee, had, on March 30, 1971, expended monies from said account to plaintiff-appellant in the sum of $525 for back support and three appraisal fees, two of which were created by the plaintiff in the preparation of her cause of action herein, namely, two appraisers who received $50 each and the court appointed another appraiser for appraisement of the real estate herein who was paid $75. The court further decreed that the costs of the appraisers should be borne equally between the parties.

The court further decreed that as per a prior order of the court, under date of July 7, 1970, defendant paid to Thomas Corey, former attorney for the plaintiff herein, $500 attorney fees and that the defendant be and he is hereby ordered to pay Melvin H. Richards, Jr. and James H. Voyles, the present attorneys for the plaintiff, the sum of $850 in full payment of all attorneys fees for the prosecution of her said cause, which the court deemed "is believed to be reasonable under the circumstances."

The court further decreed that George M. Ober, attorney at law, be, and he was, appointed commissioner to ascertain and, if necessary, transfer and divide the assets of the parties hereinbefore described, pursuant to order of the court, after first taking the oath, to do certain acts as follows:

1. In the event the plaintiff fails to make transfer of the real estate as ordered by the court and to execute any and all instruments necessary to accomplish such conveyance, then the commissioner was authorized and directed to execute a commissioner's deed of conveyance of the real estate to the defendant-appellee.

2. In the event it becomes necessary for the commissioner to qualify as such the commissioner was authorized and directed to execute any and all instruments necessary to carry out the terms and conditions of the court's findings.

3. In the event George M. Ober qualifies as commissioner he is ordered to make a report of his actions within ten days after the accomplishment of the same.

4. In the event of said commissioner qualifying as such, then the plaintiff-appellant shall compensate him for such services in the amount of $150.

The defendant was ordered to pay the court costs, which were then paid.

This finding and judgment was followed by the findings of fact and conclusions of law, also duly executed by the judge, which we do not find necessary to set out verbatim herein because of the findings and decree heretofore entered.

However, the special findings did show that the residence of the parties, on which there was no mortgage, is of approximately the same value as the profit sharing plan plaintiff-appellant had with Sears, Roebuck & Company. The residence was built by the defendant-appellee with his own hands and he had personally built three prior homes during the marriage, except that he had hired some help which he contracted himself.

Plaintiff-appellant timely filed her motion to correct errors with memorandum in support thereof, and with request for oral argument, which was overruled by the court. Plaintiff-appellant then timely filed her praecipe for a full record of the cause. The motion to correct errors contained seventeen grounds, which are set out verbatim in the argument section of her brief.

It must necessarily be inferred from the evidence that the parties to this marriage were hard working and thrifty people. They purchased the ground on which the three bedroom home was located out of their savings. Plaintiff-appellant contended she contributed to the savings from her working and her paying for the essentials enabled him to acquire the money to save to buy the materials to build the house. Of course, his labor would be considered a part of his contribution.

The profit sharing pension fund with Sears, Roebuck & Company was collectible by the employee only at her retirement or resignation; plaintiff-appellant was desirous of keeping this pension plan.

She used a part of the money she earned working at Sears for the needs of the home and children and for clothing, some of which she purchased for the defendant-appellee.

Defendant-appellee was a farmer, carpenter, handy-man and sold used cars. He has acquired no retirement benefits except those he will receive under Social Security. During the last sixteen years there were periods of time he would be out of work, but he did not remember how many and during this period of time the plaintiff-appellant had a full time job.

A stipulation of counsel states that insofar as properties may be awarded to the wife that the Marion County Bar Association Schedule be applied by the court in arriving at attorney fees for plaintiff's counsel, and with the further stipulation, or comment, of counsel that the judge, at the finalization of the case, may determine the attorney fees for the

plaintiff, based on the Marion County Bar Association Schedule.

There was a further stipulation setting forth the value of property as we have heretofore set out earlier in this opinion.

Plaintiff-appellant's contention is that the court abused its discretion and committed error in its distribution of property between the parties; that plaintiff should have received her interest in the entireties property while continuing to have an interest in the other joint assets and to retain as her separate property her pension plan. She also complains further that the court erred in failing to follow the stipulation of counsel as to plaintiff's attorney fees.

In compliance with Rule 8.3 (A) (7) of the Appellate Rules of Procedure plaintiff has grouped together the claimed errors which raise substantially the same question. In doing this the plaintiff-appellant has in her argument set out the seventeen alleged errors in four separate series.

However, TR. 59, Motion to Correct Errors (A), with nine subsections setting out and including, without limitation, the grounds for granting a motion to correct errors, does not include an allegation or charge of "abuse of discretion."

In reviewing the transcript where the motion to correct errors is set out, we note that specifications 1, 2, 3, 4 and 5 are all based on the ground of "abuse of discretion." These specifications being based on "abuse of discretion" actually raise no question for the trial court to pass upon.

However, in the remaining 12 specifications of error the same allegations of error presented in the first 5 specifications are properly covered under the motion that the verdict or decision was contrary to law or the verdict or decision was not supported by sufficient evidence upon all necessary elements of a claim or defense or as contrary to the evidence, specifically pointing out the insufficiency or defect.

We shall not be so technical that we will refuse to pass on

the first five specifications as they are included in the total of the 17 specifications and can, therefore, be handled as we are handling them hereafter in this opinion.

We might add that had appellant submitted only the five mentioned specifications of error she would have failed completely to have saved any question for review.

It is not to be considered that this opinion overrules the case of *Boshonig* v. *Boshonig* (1971), 148 Ind. App. 496, 267 N. E. 2d 555. We are of the opinion that our opinion can be more complete and we are not violating the ruling of *Boshonig* v. *Boshonig, supra,* in including specifications 1 through 5, as they have been properly set forth as heretofore said in the remaining twelve specifications.

The first series groups grounds 4, 11 and 17, which specifications will be treated by this court as one specification of error, as has the appellant, which specification of error is that the court abused its discretion in not awarding the plaintiff any interest in the residence of the parties which was held by them as tenants by the entireties and the decision of the court is contrary to the evidence and contrary to law because of the court's failure to award plaintiff-appellant an interest in the real estate.

The second series of alleged error set forth in the motion to correct errors is grounds 3, 10 and 16, all of which charge the court with abusing its discretion in treating the pension fund and profit sharing plan of the plaintiff as an item to be set off between the parties with the other property accumulated during the course of the marriage and that the decision of the court was contrary to the evidence and contrary to law in the treatment of this particular property.

The third series of alleged error set forth in the motion to correct errors covers grounds 5, 7, 8, 13 and 14, which charges the court abused its discretion in the division of the assets accumulated by the parties during their married life

and the decision is contrary to law and makes an excessive amount of recovery to the defendant and an inadequate amount of recovery to the plaintiff.

The fourth, or last, series set forth in plaintiff's motion to correct errors covers grounds 1, 2, 6, 9, 12 and 15, which, grouped together, charge the trial court with an abuse of discretion as to the award to plaintiff's counsel for attorney fees as being contrary to the stipulation of the parties and contrary to the Bar rule of the Marion County Bar Association; an abuse of discretion in not allowing a hearing on the petition for attorney fees; surprise which ordinary prudence could not guard against in that it was stipulated by counsel of record and approved by the court that the Marion County Bar Association schedule would be used in determining plaintiff's attorney fees, and it was denied by the court. Grounds 9 and 12 are that the decision of the court is contrary to the evidence as to the award to plaintiff's counsel for attorney fees and error of the court in denying plaintiff's petition for hearing on attorney fees and ground 15 that the court's decision is erroneous and contrary to law in not allowing proper attorney fees to plaintiff's counsel as per stipulation as set out in the Marion County Bar Association fee schedule.

We shall now treat these motions to correct error as grouped together in the four separate groups.

This court has determined of the four series of charged error, that each series with each subsection thereunder actually is a charge that the trial court abused its discretion, which abuse of discretion results in the decision being contrary to the evidence and/or contrary to the law and we shall group the first three series as one in this opinion. The fourth, or last, being different, will be treated separately.

We shall first discuss the matter of the division of the property when owned by the parties as tenants by the entireties.

Plaintiff-appellant contends that the court in making its award of property between the parties overlooked the fact that through plaintiff's work and efforts the fruits of at least one-half of the real estate belonged to her. It is true the residence was the home of the parties who jointly worked and paid for the same and held title so that on the death of one the survivor would own the property in fee by operation of law.

Unfortunately, the wedded bliss that apparently had held forth over the years changed from a quiet to a storm-tossed sea between the parties, who then, instead of working together to have worldly goods and a home for them and for the survivor of them, were interested in each getting at least his or her share of the property accumulated over a period of years by long hours of hard work.

Appellant cites the case of *Temme* v. *Temme* (1937), 103 Ind. App. 569, 9 N. E. 2d 111, wherein the court said:

"Where the husband and wife own real estate as tenants by the entireties, upon the granting of a divorce they become the owners of the real estate as tenants in common, and this is a proper fact to be taken into consideration in fixing the amount of alimony to be awarded the wife." Citing *Huffman* v. *Huffman* (1912), 53 Ind. App. 201, 101 N. E. 400.

Plaintiff-appellant cites further cases and contends that it is clear from the general rule that appellant would then be entitled to her interest in the real estate as the surviving widow for the reason that she was innocent of wrong doing and that the divorce was granted to her; that plaintiff-appellant had contributed through years of hard work to her interest in the home, but had been denied this right. She further contends that as a general rule of thumb by trial courts that an award to an innocent and injured wife should be a sum as would leave her in as good condition as she would have been if her husband had died and she remained a surviving widow.

We cannot agree with plaintiff-appellant's contention in her argument and for our reason therefor cite the case of

*Miller* v. *Miller* (1970), 146 Ind. App. 455, 256 N. E. 2d 589 at 593, where this court said:

> "Our Supreme Court, in the case of *Shula* v. *Shula* (1956), 235 Ind. 210, 132 N. E. 2d 612, 615, said:
>
> "'* * * Where the wife is entitled to alimony and *he* is possessed of an estate, it would be improper under any circumstances to give her less than what her *dower interest* therein would have been, for the reason that he should not be allowed to profit by his own wrong. 17 Am. Jur., Divorce and Separation, § 600, pp. 469-470.'
>
> "'* * * frequently the amount of alimony is fixed at the amount the wife would have received had her husband died, and it has been said that, * * * in no event should the allowance be less than her *dower interest* would have been. Certainly, where an absolute divorce is granted, the value of the *dower* that the wife would have otherwise received may always be considered in fixing alimony. (Our italics.) 27 C.J.S. Divorce § 236, pp. 978-979.'
>
> "'The fact that the rule above asserted is not applicable to estates by the entireties or estates in survivorship where the entire estate would vest in the wife, is made clear by the statement in the case of *Temme* v. *Temme, supra,* 103 Ind. App. 569, at page 574, 9 N. E. 2d 111, page 113, relied upon by appellee:
>
> "'* * * Where the husband and wife own real estate as tenants by the entireties, upon the granting of a divorce *they become the owners of the real estate as tenants in common,* and this is a proper fact to be taken into consideration in fixing the amount of alimony to be awarded the wife. *Huffman* v. *Huffman* (1913), 53 Ind. App. 201, 101 N. E. 400.' (Our italics.)
>
> "'The impossibility of applying the rule asserted in the *Temme* case, *supra,* as here attempted is demonstrated by the fact that, if the rule were followed a wife would be entitled to claim all the property of the parties, regardless of the source, if, at the time of the divorce, it was held under a condition of survivorship. Our courts have stated on many occasions '* * * the amount of alimony to be allowed in a divorce proceeding is a matter within the sound discretion of the trial court. The decision will not be reversed upon appeal unless an abuse of such discretion is shown.' [Citing cases.]' "

In the case of *Dieterle* v. *Dieterle* (1961), 132 Ind. App. 213, 173 N. E. 2d 665, the court said:

"In several of the cases last cited, the real estate transferred by the court was held in entireties by the parties. We find no case nor has appellant cited us to any case which holds that it is an abuse of discretion for the trial court to transfer entireties property without granting the successful wife full compensation therefor. There may arise causes, of course, where the factual situation and the estates of the parties may result in the abuse of discretion by the trial court in its adjustment of the property rights and interests of the parties. But we find no Indiana court which lays down as an inflexible general rule that the trial court abuses its discretion by transferring the entireties property between the parties without allowing the successful wife 'full compensation therefor.'"

In *Miller* v. *Miller, supra,* the evidence was that the parties owned real estate as tenants by the entireties of the fair market value of $12,500 which was paid for, in part, by appellee out of funds received from his father's estate in 1958 in the amount of $8,600 and funds from his mother's estate in 1961 in the approximate amount of $14,000. The farm was purchased in 1963 with a down payment of $11,000. Of course, there is a dissimilarity of facts between that case and the case at bar, as in the case at bar each of the parties had worked diligently and apparently had saved each cent they could to accumulate what they had.

Despite the dissimilarity of facts between the case at bar and *Miller* v. *Miller* and *Temme* v. *Temme,* there is presented to this court the problem of dollars and cents by way of a property settlement with no concern for the custody of minor children and the plaintiff-appellant apparently having no concern for the defendant-appellee who, as evidenced by the transcript, was at the time of the divorce totally disabled.

IC 31-1-12-17 Ind. Ann. Stat. § 3-1218 (Burns 1968) reads, in part, as follows:

". . . any property, real, personal or mixed, owned as joint tenants or as tenants by the entireties by the parties to the divorce action which shall not be expressly included in and covered by the decree of divorce shall, upon the rendition of such decree, vest in such parties equally as tenants in common. . . ."

In the case at bar all the property of the parties was covered by the decree of divorce and therefore the statute cannot be applied to the set of facts had in the case of *Miller* v. *Miller, supra.*

The court said, in *Miller* v. *Miller, supra,* at pp. 591-592 of 256 N. E. 2d:

"While there is no binding or set rules to govern the trial court, that court, nevertheless, in determining the amount of alimony in a divorce proceeding should be guided by the particular circumstances involved, but it is proper for the trial court to consider the following factors, as set forth in *Bahre* v. *Bahre* (1962), 133 Ind. App. 567, 571, 181 N. E. 2d 639, 641, Transfer Denied June 28, 1962:

" '* * * (1) the existing property rights of the parties, * * * (2) the amount of property owned and held by the husband and the source from which it came, * * * (3) the financial condition and income of the parties and the ability of the husband to earn money, * * * (4) whether or not the wife by her industry and economy has contributed to the accumulation of the husband's property, * * * (5) the separate estate of the wife, * * *' "Also, see *Ferguson* v. *Ferguson* (1955), 125 Ind. App. 596, 125 N. E. 2d 816.

"In determining whether there was an abuse of discretion in the trial court's consideration of such guidelines as laid out in *Bahre* v. *Bahre, supra,* and *Ferguson* v. *Ferguson, supra,* we, as a reviewing court can only draw reasonable inferences in favor of the appellee, for we do not have the prerogative of weighing the evidence or evaluating the credibility or demeanor of the witnesses who testified." In *Miller* v. *Miller, supra,* the court further said:

"In the more recent case of *Grant* v. *Grant* (1967), Ind. App., 230 N. E. 2d 339, Judge Cooper of this court explicitly and very competently sets forth the role of the

Appellate Court in reference to abuse of discretion in the awarding of alimony and property settlement:

"'This court has stated many times that in divorce cases the trial court has not only the power but the statutory duty to adjust and adjudicate the property rights of the parties involved. While the adjusting of property rights between the parties is the mandatory duty of the trial court, in so doing, it has broad discretionary powers, and the awarding of alimony is solely within the court's discretion. The court may also transfer property as between the parties, whether it be real, personal or mixed, and whether title at the time of the trial is held by the parties jointly or by one of them individually. *Draime* v. *Draime* (1961), 132 Ind. App. 99, 103, 173 N. E. 2d 70; *Proctor* v. *Proctor* (1955), 125 Ind. App. 692, 125 N. E. 2d 443. See also, Burns' Ind. Stat., 1946 Repl., Sec. 3-1217 and 3-1218.'

"Judge Cooper further sets out:

"'* * * *Therefore the exercise of a trial court's discretion is not reviewable on appeal. It is only the abuse of the power of discretion which is reviewable on appeal and the presumption in favor of the correct action of the trial court is one of the strongest presumptions applicable to the consideration of a case on appeal. Estate of Alexander, Sr., Deceased* v. *Alexander* (1966), 138 Ind. App. 443, 212 N. E. 2d 911, 915; *Draime* v. *Draime, (Supra) Holst* v. *Holst,* [Ind. App., 212 N. E. 2d 26] *(Supra).'* (Our emphasis.)"

On the other hand, in *Miller* v. *Miller, supra,* the court stated:

"'* * * As was said in the case of *Walker et al.* v. *Walker et al.* (1898), 150 Ind. 317, 328, 50 N. E. 68, 71:

"'Where the wife proves recreant to her marriage obligations, and has destroyed the marital union by acts of adultery or other gross misconduct, and her husband is thereby entitled to a decree of divorce, the court granting the same, has the discretionary power, and, under proper circumstances warranting the same, will generally exercise it, and allot to the injured husband such a portion of the property or means which he had settled upon the wife as will place him in the position, to some extent at least, which he would have occupied had the union continued.'

"'This rule was approved in *Mendenhall* v. *Mendenhall,* 1946, 116 Ind. App. 545, 64 N. E. 2d 806, and in the case

of *Wallace* v. *Wallace,* [123 Ind. App. 454, 110 N. E. 2d 514, 111 N. E. 2d 90] *supra.* Therefore, without holding so, we do not come to the arbitrary conclusion that a husband is not entitled to alimony in this state given the proper surrounding circumstances.' "

This court at this time does now emphatically state that there is nothing in the record which would cause this court to even infer that the marital union in the case at bar was destroyed by adultery or gross misconduct. The *Walker* and *Mendenhall* cases are cited as authority for the trial court to take into consideration the fact that the defendant was totally disabled and bedfast with arthritis of the spine and a heart condition and therefore it is this court's opinion that the trial court was justified in taking the defendant-appellee's physical condition and his future ability to earn income into consideration in setting off to him the real estate owned by the parties as tenants by the entireties. Considering all the evidence in this cause and the fact that the plaintiff-appellant did work for sixteen years to help accumulate a home she described as being "beautiful" and help support herself and family and have the things that people desire to have in life, we must further consider the fact of the total disability of the defendant-appellee as hereinabove set out, and which it was necessary to learn from a review of the transcript. And considering further that the wife was awarded the divorce, we are still of the confirmed opinion that there is sufficient evidence for the trial court to grant the plaintiff-appellant the divorce and to make distribution of the real estate as was done.

It is our further opinion that the decision of the court was not contrary to law. To determine this we apply the test in *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669, which is:

"It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has

reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law."

Referring to the second series of grounds set forth in the motion to correct errors which is, again, abuse of discretion in treating the assets of the pension fund and profit sharing plan of plaintiff as an item to be set off between the parties with the other property accumulated by the parties during the course of the marriage; the decision of the court in doing so was contrary to the evidence and the decision of the court is contrary to law, we must necessarily consider the cases heretofore considered and the ruling of the court on the first series and having done so we are of the opinion that the court did not abuse its discretion in treating the assets of the pension fund and profit sharing plan of plaintiff-appellant as an item to be set off between the parties with the other property accumulated by the parties during the course of their marriage. It is our further opinion it was equitable and just to give the pension fund and profit sharing plan to plaintiff-appellant, which funds she had saved and which were made possible by and through the help and work of her husband, the defendant-appellee, and that without his help and work it would have been impossible for her to have accumulated the amount she did in her employer's pension and profit sharing plan.

This court is of the further opinion that the question presented here as to the pension and profit sharing plan owned by plaintiff-appellant is most similar to the question presented in *Hedrick* v. *Hedrick* (1891), 128 Ind. 522, 26 N. E. 768, wherein our Supreme Court held that it was not error for evidence to be introduced as to the amount of money which a husband was receiving from a pension plan at the time of the divorce. On the contrary, it was not only proper but the trial judge had a duty to take into consideration that income in determining the property settlement.

Counsel for plaintiff-appellant, during oral argument, was interrogated from the bench as to whether, in his opinion, the same law which he was contending necessarily made the plaintiff-appellant the absolute owner of her pension fund as a personal thing would apply to a pension fund if it were held and owned by the husband, defendant-appellee. He answered in the affirmative.

With this contention this court cannot agree. Even though a pension fund is personally earned, owned and in the name of one of the parties to the marriage contract and is payable only to the person owning the same on reaching retirement age or on discontinuance of employment, it is, under the rules of the cases hereinabove recited, and in the opinion of this court, evidence to be taken into consideration by the court in determination of the amount of award of a property settlement.

We are of the further opinion, under the guidelines of *Pokraka* v. *Lummus Co., supra,* that the decision of the court on series 2 was not contrary to law.

As to series 3 the court is of the opinion that the specifications thereunder, namely, grounds 5, 7, 8, 13 and 14, are a reiteration of those specifications set forth in series 1 and series 2 heretofore discussed and present no further or additional questions to the court.

We therefore hold that any question raised by them has been answered in this opinion.

As to series 4, wherein it is charged that the court, by its entry of April 4, 1971, abused its discretion as to the award to plaintiff's counsel for attorney fees in that counsel for both parties had stipulated that fees for plaintiff's counsel would be paid on the Marion County Bar Association fee schedule for a contested divorce case, also comes under the same abstract propositions of law as heretofore set forth in series 1 and 2.

The allowance of an attorney fee, whether based on expert

testimony or upon the wisdom of the trial judge from his experience through years of law business and his ▉ knowledge of the schedule of fees, is solely within the discretion of the trial judge.

In the case at bar the defendant-appellee was practically an invalid; he could not work. His wife was securing a divorce from him and the income which she had contributed to the home and the family was about to and would terminate on the finality of the divorce.

Plaintiff-appellant had had two previous attorneys, the first of whom was Andrew Jacobs, Sr., who, according to the transcript testified he had been paid, with the remark "The early bird gets the worm." She had also employed Thomas Corey and he had been paid $500, as stipulated by the parties, and the amount allowed to the present attorneys was $850. The defendant-appellee, in uncontroverted evidence as shown in the transcript testified at the trial he had paid at least $1,200.00 attorney fees. A simple calculation by the court is conclusive that the defendant-appellee had paid a total of $2,050.00 attorney fees to plaintiff-appellant's attorneys.

This court cannot condone a wife's hiring and firing attorneys at her own whim and fancy, either because she cannot get along with them or because this can be used as a vehicle to further punish the husband financially by having to pay more to her attorneys than might otherwise be necessary.

Considering the evidence that the entire fee paid by defendant-appellee to plaintiff's attorneys was $2,050.00; the fact that the property was divided equally as nearly as possible in value, between the parties and the further fact that the defendant-appellee was an invalid and unable to work and that plaintiff-appellant still had her job and her income and her pension and retirement, we are of the opinion that the $850 attorney fee allowed by the court to the present, or

third set of, attorneys closing the case was adequate and a sufficient amount for services rendered and was not an abuse of judicial discretion.

We, as lawyers, whether serving in the courts of justice as practitioners, on the trial court, or as a judge of this court or of our Supreme Court have an obligation never to lose sight of what is just and reasonable. Some cases stand much larger fees than others, depending on the circumstances. This is one which, in the opinion of this court, is that of a man unable to work, and the attorney fees should be more or less nominal. However, this court is not saying that attorneys should be required to work without pay or be underpaid. We take judicial notice of the tremendous expense of operating and maintaining a law office, as well as the time and expense in securing a legal education.

In the case of *McDaniel* v. *McDaniel* (1964), 245 Ind. 551, 201 N. E. 2d 215, wherein the plaintiff-appellee brought an action for divorce against the defendant-appellant and wherein she filed a cross-complaint for divorce and alimony by which she asserted she was entitled to alimony as a part of a spendthrift trust which appellee had created in himself, which amounted to approximately $100,000.

The money placed in trust had come to plaintiff-appellee as a result of a recovery in a damage suit he had had as the result of a collision in which he was severely and critically injured.

Plaintiff-appellee contended that the spendthrift trust he had created for himself should not be considered in the allowance of any alimony. Our Supreme Court held that the trust in this instance should be considered a part of his estate and should be considered in determining the amount of alimony award and attorney fees and as to abuse of discretion on allowance of attorney fees, the court said:

"Finally, it is contended that the court abused its discretion as to the allowance of attorney fees, in that they were too small. It is true that expert testimony before the court

supported the fact of much larger attorney fees than those awarded. However, the reasonableness of attorney fees is also a matter regarding which the judge, being a lawyer, may take judicial notice. Therefore, this court will not disturb the trial court's award as to attorney fees, unless there is a clear abuse of discretion. *Bitner* v. *Bitner* (1950), 228 Ind. 259, 91 N. E. 2d 169. Neither the meager evidence nor the briefs filed in support of the pleadings in this case require a determination that, to this point in the proceedings, there was such an abuse of discretion."

We are of the further opinion that the court did not abuse its discretion in refusing to allow a hearing on the petition of plaintiff-appellant's counsel seeking a hearing on attorney fees, filed on April 15, 1971.

We are of the further opinion there was no surprise to plaintiff-appellant's attorneys which ordinary prudence could not have guarded against since it was stipulated by counsel of record and approved by the court that the Marion County Bar Association schedule would be used in determining plaintiff's attorney fees, as the present attorneys were cognizant that two attorneys had been paid before they were employed in the case.

We are of the further opinion the decision of the court is not contrary to the evidence as to the award of attorney fees as there is ample evidence that the amount paid, with the defendant-appellee being unable to work, would indicate a lesser attorney fee than would be expected had he been able bodied and working. We are of the further opinion that there was no abuse of discretion by the trial court and we will not disturb the trial court's award of attorney fees.

Specification 12 is the same as and heretofore answered under specification 2 of this series.

Specification 15, that the decision of the court is contrary to law in not allowing a proper attorney fee to plaintiff's counsel in this cause, in our opinion, is without merit and is not contrary to law. *Pokraka* v. *Lummus Co., supra.*

Finding no error in the record this cause is hereby in all things affirmed.

Lybrook and Robertson, JJ., concur.

NOTE.—Reported in 277 N. E. 2d 802.