Larry L. McCALLISTER, Appellant (Petitioner Below),

v.

Suzanne J. McCALLISTER, Appellee (Respondent Below).

No. 2–784A220.

Court of Appeals of Indiana, Second District.

Feb. 13, 1986.

Bruce M. Pennamped, Indianapolis, for appellant.

Ronald E. McShurley, Muncie, for appellee.

SHIELDS, Judge.

Larry L. McCallister (Larry) appeals the denial of his petition to change the custody of his daughter, Kelli, from Larry's former wife and Kelli's mother, Suzanne, to Larry. He additionally appeals the grant of Suzanne's petition to increase his child support obligation and the trial court's judgment ordering him to pay $4,800 of Suzanne's attorney fees.

We affirm.

## FACTS

The marriage of Larry and Suzanne was dissolved on July 1, 1976, approximately six (6) months after the birth of their child, Kelli. The decree of dissolution awarded custody of Kelli to Suzanne. On July 22, 1983, Larry petitioned for a change of custody. On October 28, 1983, Suzanne petitioned for an increase in support and for attorney fees. Additional pertinent facts are included within the discussion of the issues.

## I. CUSTODY

The standard on review of a trial court's decision regarding a modification of custody is well-established in Indiana. In the original action for dissolution of marriage, the trial court is invested with discretion to determine custody in the child's best interests. Ind.Code Ann. § 31-1-11.5-21(a) (Burns Repl. 1980). However, once the initial determination is made, a modification of custody shall be made "only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." Ind. Code § 31-1-11.5-22)(d). On the appeal of a trial court's decision in a modification proceeding, we must view the evidence and reasonable inferences most favorable to the trial court's judgment. *Redslob v. Redslob* (1982) Ind.App., 433 N.E.2d 819. Our duty is to affirm rather than substitute our judgment for the trial court if the evidence or reasonable inferences support the court's decision. *Poret v. Martin* (1982) Ind., 434 N.E.2d 885. In essence, the burden is on the appellant to demonstrate the trial court's judgment is clearly against the logic and effect of the facts before the court and thereby constitutes a clear abuse of discretion requiring reversal. *Redslob*, 433 N.E.2d at 821.

With this standard of review in mind, we turn to Larry's argument advocating a reversal of the trial court's custody decision. As expected, Larry argues his version of the evidence which portrays Suzanne as having a histrionic personality, as lacking in inter-personal insights, as unstable and dependent, as having difficulty in making decisions, and as having a chaotic lifestyle,[1] all adversely affecting Kelli's well-being.

What Larry overlooks is the evidence Suzanne did not have any negative personality traits and was a competent mother committed to her mothering role. In par-

---

1. He relates Suzanne's employment and marital history for the six to seven year period from the date of the parties' dissolution to the date of the hearing. Since the parties' dissolution, Suzanne married twice, moved households six times and held four or five assorted jobs, principally as a registered nurse. Suzanne responded her household moves resulted from her changes in marital status and accompanying marital difficulties while her assorted jobs resulted from her efforts to stay at home with her children as much as possible.

ticular, Kelli and her parents were examined by several psychologists including expert witnesses, Dr. Donald Hendrickson and Dr. Harry Mahannah. Dr. Hendrickson found Kelli wished to live with Suzanne and benefitted greatly from her interaction with two younger half-siblings of whom Suzanne also had custody.[2] *See Pribush v. Roy* (1983) Ind.App., 456 N.E.2d 747 (recognized significance of opportunity to cultivate a relationship with a blood sibling). Further although Kelli had exhibited destructive behavior while Suzanne was experiencing marital difficulties and Kelli was living with Larry, Kelli was now "functioning better and not as anxious or feeling as insecure" in Suzanne's home. Record at 515. On the other hand, both Dr. Hendrickson and Dr. Mahannah agreed Larry accorded Kelli "a rather omnipotent position" (Record at 824) in his household and overindulged Kelli's desires. Although Suzanne was aware of her need for counseling as well as Kelli's, Larry was "limited in his awareness that he would also need counseling" and "reported himself [as] ... perfect." Record at 824–25.

■ This evidence amply supports the trial court's determination, recited in a memorandum supplementing the judgment, that "[t]he evidence in this case does not persuade me that there has been such a substantial change of circumstances since 1976 that the existing custody order is now unreasonable." Record at 161. This is particularly true when we remember the polestar consideration is the *continuing effect* of any changes on the children's welfare. *See, e.g., Whitman v. Whitman* (1980) Ind.App., 405 N.E.2d 608.

■ Larry next argues his physical custody of Kelli for 19 months was "overlooked" by the trial court and alone constituted an abuse of discretion requiring reversal. To the contrary, as evidenced by its memorandum, the trial court was expressly aware of the temporary change in Kelli's living arrangements but refused to recognize the change as dispositive. That determination is well justified by the fact

that, during the first months of Larry's physical custody of Kelli, Suzanne was with her daily from approximately 1:00 o'clock p.m. to 7:00 o'clock p.m. It was only after Suzanne requested the return of Kelli's physical custody that Larry restricted Suzanne's time with Kelli to week-ends. Consequently, there is a total absence of evidence of abandonment such as existed in *McKay v. Carstens* (1952), 231 Ind. 252, 108 N.E.2d 249, a case cited by Larry. Similarly, there is an absence of evidence of lack of proper care as existed in another case cited by Larry, *Neighley v. Neighley* (1971), 256 Ind. 43, 266 N.E.2d 793.

■ Finally, Larry claims the trial court erroneously considered "practical reasons" outside the statutory guidelines in reaching its judgment. The trial court's memorandum reveals the "practical reasons" referenced by the trial court are, indeed, appropriate. In relevant part, the trial court stated:

> "Beyond the policy and legal issues, there are some practical reasons why a change of custody might be undesirable. A change at this time would separate Kelli from her brother and sister and from the parent who is best able to give full-time attention to her needs."

Record at 161. In *Pribush v. Roy* (1983) Ind.App., 456 N.E.2d 747 this court recognized as significant the opportunity to cultivate a relationship with a blood sibling. Similarly, judicial consideration of whom will be doing the hands on, hour by hour parenting, can never be considered inappropriate.

The court appropriately and properly assessed the changes since the dissolution and their effect on Kelli "in the context of the whole environment." *Poret v. Martin* (1982) Ind., 434 N.E.2d 885, 888.

## II.

■ ■ Larry next argues the court abused its discretion in increasing his child support obligation from $45.00 per week to

---

**2.** Larry's household was comprised of adults only.

$120.00 per week. Larry contends Suzanne failed to demonstrate Larry's income has increased since 1976, the year of their dissolution. In addition, he contends the trial court failed to consider Suzanne's earning ability as a registered nurse although she is currently employed only in her home as a part-time babysitter.[3]

█ The trial court may modify a support order "only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Ind.Code § 31-1-11.5-17(a). On review, we will reverse the court's decision only for an abuse of discretion from a view of the evidence most favorable to the trial court's determination. *Gerber v. Gerber* (1985) Ind.App., 476 N.E.2d 531.

Larry relies on *Jahn v. Jahn* (1979) 179 Ind.App. 368, 385 N.E.2d 488 for his argument an increase in support must be based upon a demonstrated increase in Larry's income. In *Jahn* the trial court denied wife's petition to increase support. In so doing, the trial court found wife had failed to present evidence showing an increase in husband's earnings which would justify an increased award. On appeal, wife assumed the trial court's failure to increase support was based solely on her failure to present evidence of husband's earnings and, therefore, the denial constituted abuse of discretion and was contrary to law. This court implicitly disagreed with the wife's assumption because it affirmed the trial court's action based upon the totality of the evidence presented to the trial court rather than on the basis that wife's failure to

offer evidence of husband's present earnings, by itself, precluded the relief sought.

█ An increase in the non-custodial spouse's income is not a prerequisite for an increase in support. Many factors impact upon ability to pay besides, and in addition to, income. Hence, the trial court must consider the totality of the circumstances involved. *Jahn* 385 N.E.2d at 491-92. Generally, the relevant circumstances encompass two primary areas for concern in determining the propriety of a modification of support: 1) the parents' general economic status as it affects their ability to financially provide for the child, and 2) the child's needs.

█ In the instant case, the trial court expressly recognized Larry's decrease in income since 1976 but emphasized Larry nevertheless had increased his ability to pay. In its memorandum the trial court stated:

"The evidence ... indicates he [Dr. McCallister] has suffered a significant drop in income since 1976.... [I]mportantly, Dr. McCallister is able to pay a larger share of Kelli's maintenance. His present support payment is approximately two percent of his taxable income. The evidence also documents that during the years since 1976, he has continued to earn an excellent income and been able to accumulate liquid assets and valuable personal property...." [4]

Record at 162.

Even assuming Larry's current overall financial position is not as advantageous as

---

**3.** Larry also argues the trial court improperly considered: 1) Suzanne's expenses as including those for not only Kelli but for her current husband and additional two children; and 2) the anticipated loss, in one and a half years, of income from a property settlement agreement from Suzanne's later dissolution. However, the record fails to reveal Larry objected to the evidence. Any allegation of error in its admission is therefore waived. In any event the evidence is probative. Suzanne's exhibit of itemized expenses is divisible by the number of persons in her household to determine the estimate of expenses occasioned by Kelli. The loss of outside income, from whatever source, is also relevant

to the extent of determining the stability of Suzanne's present financial circumstances.

**4.** The evidence supports the trial court's determination. It reveals that while Larry's income as a general practice physician had decreased to approximately $100,000 (adjusted gross income) per year, he had demonstrated the ability, since the dissolution, to acquire assets including a $100,000 home with $40,000 in equity, 6 fully paid automobiles, a $50,000 certificate of deposit, and $38,000 of municipal bonds which generate $4,210 of tax free interest. In addition, several of Larry's obligations in 1976, including a $10,000 per year alimony payment to a former

it was in 1976, this fact alone does not render an increase in support as unreasonable given Kelli's changing needs.[5]

■ At the time of the initial support order, Kelli was six months old. At the time of the hearing she was nine years old. Kelli is now in school, attends Brownies and takes piano and ballet lessons. The gradual but significant increase in child-rearing expenses were absorbed by Suzanne for the first nine years of Kelli's life. The trial court's decision to prospectively allocate the burden of the increased expenses to both Larry and Suzanne is reasonable under the circumstances.

■ In this regard the trial court's recognition of Suzanne's decision to remain at home with her children, babysitting part-time, as a "reasonable choice under the circumstances" (Record at 162) did not manifest a prima facie abuse of discretion. Larry relies on *Gerber v. Gerber* (1985) Ind.App., 476 N.E.2d 531 to challenge the court's recognition of Suzanne's part-time employment as "reasonable". *Gerber* recognized as reasonable the trial court's determination the non-custodian's voluntary termination of employment two weeks prior to the hearing on support was not a circumstance "of such permanence or continuing nature as to make the support order unreasonable." *Id.* at 533. In contrast, in the years since the dissolution, Suzanne's employment has been consistent-

ly sporadic. Further, as recognized by the trial court, two small children in addition to Kelli benefit from Suzanne's full-time parenting.[6] The trial court did not err in considering Suzanne's earning ability as a registered nurse is impaired by her status as a part-time employee and that the impairment is reasonable because she has the responsibility and the desire to care for three small children.[7] In addition, the trial court did not err in considering the impairment significant and continuing. Consequently, the trial court's decision to increase Larry's contribution to Kelli's support was not clearly against the logic and effect of the facts and circumstances presented.

### III.

Larry's last argument challenges the award of $4,800 in fees to Suzanne's attorneys. Specifically, he contends the award was improper because 1) Suzanne's initial petition to terminate visitation was made in bad faith and 2) Suzanne has funds or credit sufficient to pay her own fees as evidenced by her use of her VISA account to provide her attorneys with a $2,500 retainer.

■ The rule barring an award of fees in favor of a party who nonetheless possessed sufficient funds or credit was abandoned upon adoption of the statute at issue, Ind. Code § 31–1–11.5–16.[8] *Taylor*

---

wife, had been satisfied at the time of the hearing.

5. Child support awards are designed to provide a child as closely as possible with the same standard of living as the child would have enjoyed had the marriage not been dissolved. Although a non-custodial parent's income or financial condition might remain stable or even decrease over the years, the share of that income consumed by the child may increase substantially, even giving appropriate consideration to the duty of the custodial parent to share in the increased cost of child rearing, due to the child's increasing need for economic support. An increase in child support, even in the event of a decrease in income, may nonetheless be reasonable under the circumstances.

6. The trial court, in its memorandum, stated:

"Suzanne was working in 1976. Today, she is unemployed. While that is a matter of choice, it is a reasonable choice under the circumstances. Presumably, her three young children, including Kelli, benefit with a "full-time" parent in the home."
Record at 162.

7. This is not to say that had Suzanne made the opposite choice (to seek full time employment in order to render material assistance to the children) that that choice would not have been equally reasonable.

8. I.C. § 31–1–11.5–16 provides in pertinent part:
"The court from time to time may order a party to pay a reasonable amount for the cost to the party of maintaining or defending any proceeding under this chapter and for attorney's fees."

v. *Taylor* (1982) Ind., 436 N.E.2d 56; *Redslob*, 433 N.E.2d at 823. Under this statute, the award of Suzanne's attorney fees is subject to the broad discretion of the trial court based upon a consideration of all the circumstances. The court must consider both Suzanne and Larry's resources, their economic condition, and their ability to engage in gainful employment and earn an adequate income. *See Barnett v. Barnett* (1983) Ind.App., 447 N.E.2d 1172. In addition, the trial court was warranted in considering Larry's superior earning power. *See In re Marriage of Salas* (1983) Ind. App., 447 N.E.2d 1176. Even assuming Suzanne had sufficient credit to meet her attorney fees, Larry's superior earning ability and income supported the trial court's award in view of Suzanne's financial condition and limited resources.

■ In addition, although a trial court may consider the responsibility of one of the parties for incurring fees, the evidence did not establish bad faith on the part of Suzanne in initially seeking a termination of Larry's visitation.[9] Suzanne's initial petition intimated Larry abused Kelli and intended to remove Kelli from the court's jurisdiction. Larry contends Suzanne's later alleged renunciation of these accusations was tantamount to bad faith in pursuing the petition for the termination of his visitation rights. We recognize the trial court's memorandum found in Larry's favor on these issues and Suzanne does not appeal that decision. However, Suzanne's alleged renunciation only indicated that, after a medical examination of Kelli, she "still [did]n't know" whether Kelli had been abused. In addition Suzanne's attorneys successfully represented her in her opposition to Larry's petition for a change of custody and in pursuit of her request for an increase in child support.[10] Consequently, unlike *Stigall v. Stigall* (1972) 151 Ind. App. 26, 277 N.E.2d 802, on which Larry relies, Suzanne's attorney fees were not unnecessarily generated by bad faith or "whim and fancy". *Id.* 277 N.E.2d at 812 (wife denied fees where she hired and fired attorneys at will).

Judgment affirmed.

BUCHANAN, C.J. and SULLIVAN, J., concur.

---

9. On July 20, 1983, two days before Larry filed his petition for change of custody, Suzanne petitioned for a restriction of Larry's visitation rights based on suspected abuse of Kelli and an alleged plan by Larry to remove Kelli from the court's jurisdiction. Neither the original petition nor a transcript of the emergency hearing on the matter is included in the record on appeal.

10. It also appears the total fees incurred were larger than the amount awarded. Neither the briefs nor the court's memorandum indicate whether the award for fees was intended to be partial or complete. However, the time sheets submitted by Suzanne's attorney totalled 62.2 hours but did not include four days spent at the hearing. At the rate of $75.00 per hour, the rate billed to Suzanne, the fees, excluding fees for trial, totalled $4,665.00. Neither the time expended nor the hourly rate was challenged on appeal as unreasonable.