**In re the Marriage of Jack E. WARNER, Appellee (Petitioner Below),**

v.

**Paula S. WARNER, Appellant (Respondent Below).**

**No. 50A03–8805–CV–146.**

Court of Appeals of Indiana, Third District.

Feb. 20, 1989.

James E. Burke, Leonard V. Campanale, Mishawaka, for appellant.

Mary E. Davis, Davis & Davis, P.C., Elkhart, for appellee.

STATON, Judge.

Paula S. Warner appeals the grant of custody of her son, Brian, to his father, Jack E. Warner, following the dissolution of their marriage; the following issues are before this court for review:

I. Whether the trial court erred by granting custody to Jack, the child's father?

II. Whether the court erred by failing to make specific findings of fact?

III. Whether the court erred by denying the Appellant's Motion to Correct Errors based on newly discovered evidence?

IV. Whether Appellate Rule 15(G) warrants the granting of damages to the Appellee?

Affirmed.

The marriage of Paula S. and Jack E. Warner was dissolved on December 10, 1987; the court granted custody of the sole child of that union, Brian, age 4, to the father, Jack; the court gave the mother, Paula, visitation rights. At the time of the custody decree, Jack lived with his three (3) daughters from a previous marriage;[1] although Paula was granted custody of her son from a previous marriage, Paula had surrendered custody of that child.[2]

## I.

### Custody Decision

Paula alleges that the court erred in granting custody of Brian to his father, Jack. Specifically, Paula claims the court did not follow the statutory guidelines for determining custody, and that the final decision was an abuse of discretion. We disagree.

The trial judge is to determine custody in the child's best interests, as outlined in the following statute:

(a) The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there shall be no presumption favoring either parent. The court shall consider all relevant factors including:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child;

---

1. Their mother was awarded custody; however, the eldest daughter requested to live with Jack and her mother consented, and, upon learning that their stepfather was making sexual advances toward his two younger daughters, Jack "assumed" custody of them.

2. As she was experiencing financial difficulties, Paula felt that it was in her son's best interest to do so.

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school, and community; and

(6) the mental and physical health of all individuals involved.

West's A.I.C. § 31–1–11.5–21(a) (Supp. 1988).

Upon review of the court's custody decision, we are to determine only whether that decision is an abuse of discretion, i.e., whether it is contrary to "the logic and effect of the facts," a burden which the appellant must demonstrate. *McCallister v. McCallister* (1986), Ind.App., 488 N.E.2d 1147, 1150. Since it is our duty to affirm the trial court's decision if supported by the evidence or its reasonable inferences, we view the evidence and its reasonable inferences in a light most favorable to the trial court's judgment. *Id.*

■ Here, while the testimony of Jack and Paula was naturally antithetical, the court's decision is not contrary to the evidence. Its granting the custody of Brian to Jack, the father, does not constitute an abuse of discretion.

Third party testimony supports the court's decision. After speaking with Jack, Paula, and Brian and noting their strengths and weaknesses in a written report, the psychologist recommended that custody be given to Jack. Among other things, the psychologist noted that Jack had a greater ability than Paula to put Brian's needs first. The psychologist also indicated that, while it is important for a young child to get the nurturing usually attributable to a mother, Jack was able to provide that nurturing; additionally, as a child gets older, being able to identify with a parent of the same sex is important. For similar reasons, the custody investigator for the Court reported that Jack should be given custody of Brian.

The court also had before it testimony of the time that Jack spent with Brian, as well as the fact that Jack's daughters from a previous marriage have a good relationship with Brian. The testimony of Linda Rice, the neighbor who watched Brian for Jack, supported this testimony.

Paula and Jack testified that they loved Brian and would adequately care for him. Both testified as to their own strengths and pointed to the weaknesses of their former spouses. Nonetheless, evidence indicated that neither parent would be with Brian during the day, thus facilitating the need for a sitter. While there was conflicting testimony as to the extent of Jack's permissiveness with his three daughters, we are to view the evidence most favorable to the judgment of the trial court. *McCallister, supra*, at 1150. Thus, as the trial court's decision is not wholly contrary to the evidence, there is no abuse of discretion.

## II.

### *Specific Findings of Fact*

Paula alleges that the trial court erred by not entering specific findings of fact. However,

[i]n the case of issues tried upon the facts without a jury or with an advisory jury, the court shall determine the facts and judgment shall be entered.... Upon its own motion, or the *written request of any party* filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury ... shall find the facts specially and state its conclusions thereon. The court shall make special findings of fact without request

(1) in granting or refusing preliminary injunctions;

(2) in any review of actions by an administrative agency; and

(3) in any other case provided by these rules or by statute. (Emphasis added.)

Indiana Rules of Procedure, Trial Rule 52(A).

■ As this case does not fall under any of the three categories delineated above, and, as Paula does not claim to have requested specific findings of fact in writing pursuant to Trial Rule 52(A), no specific

findings are required. Therefore, "the statute [I.C. § 31–1–11.5–21] only requires that the court *consider* all relevant factors. Specific findings on each of the listed factors are not required." *In Re Marriage of Ford* (1984), Ind.App., 470 N.E.2d 357, 363, *reh. denied, trans. denied.*

We find no error here.

## III.

### Newly Discovered Evidence

Paula also contends that the trial court wrongfully denied her Motion to Correct Errors based upon newly discovered evidence.

Trial Rule 59 provides:

## TRIAL RULE 59. MOTION TO CORRECT ERROR.

(A) Motion to Correct Error—Bases for. The bases for a motion to correct error are established, without limitation, as follows:

\*    \*    \*    \*    \*    \*

(6) Newly discovered material evidence which could not, with reasonable diligence have been discovered and produced at the trial;

Indiana Rules of Procedure, Trial Rule 59(A)(6).

In *Mid–States Aircraft Engines, Inc. v. Mize Co.* (1984), Ind.App., 467 N.E.2d 1242, this court reiterated the requirements for evidence to be "newly discovered evidence."

Newly discovered evidence must be
1. material,
2. more than cumulative or impeaching,
3. shown not to have been discoverable before trial by the exercise of due diligence, and
4. evidence which would reasonably and probably change the outcome of the trial.

(Citations omitted.)

*Mid–States, supra,* at 1247.

■ Here, the evidence Paula specifically refers to is the fact that Jack's 17–year old unwed daughter gave birth to a child during the course of the trial. Keeping the above definition of "newly discovered evidence" in mind, we note that the evidence that Paula refers to does not meet the enumerated requirements. The court already had before it evidence that one of Jack's other daughters, younger than the one in question, had an abortion at the age of 16. The "newly discovered evidence" that the 17–year old daughter gave birth to a child is no more than cumulative evidence. Further, if the court's decision was not affected by one daughter having an abortion, we cannot say that another daughter giving birth would change the trial court's decision. Again, we find no error here.

## IV.

### Damages

Jack filed a motion for damages via the assessment of attorney fees under Appellate Rule 15(G), urging that Paula's claim was frivolous and that she blatantly disregarded court procedure.

Appellate Rule 15(G) reads:

(G) Damages Against Appellant. If the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten percent (10%) upon the judgment, in money judgments, and in other cases in the discretion of the court; and the court shall remand such cause for execution.

Indiana Rules of Procedure, Appellate Rule 15(G).

■ Mindful of recent cases [3] in which attorney fees were awarded pursuant to this rule, we nonetheless deny Jack's request. While Paula's brief does not wholly comply with the Rules of Appellate Proce-

---

3. See, *Lesher v. Baltimore Football Club* (1987), Ind., 512 N.E.2d 156, and *Matter of Guardianship of Posey* (1986), Ind.App., 513 N.E.2d 674, *aff'd, Posey v. Lafayette Bank & Trust Co.* (1987), Ind., 512 N.E.2d 155, *reh. denied, cert. denied, Harkrider v. Lafayette Bank & Trust Co.* (1988), —— U.S. ——, 108 S.Ct. 1292, 99 L.Ed.2d 502.

dure, we decline to award damages for that reason alone.[4]

Further, we note that while Jack is quick to point to the faults of his adversary's material, *neither* side noted that *Orr v. Turco Mfg. Co., Inc.* (1986), Ind.App., 496 N.E.2d 115, *reh. denied,* was vacated by our Supreme Court in *Orr v. Turco Mfg. Co., Inc.* (1987), Ind., 512 N.E.2d 151.

In denying damages, Justice Dickson wrote:

> [I]n exercising its discretionary power to award damages on appeal, an appellate tribunal must use *extreme restraint.* Notwithstanding the harmful delay occasioned by crowded judicial dockets and limited resources, we cannot fail to recognize that *the imposition of punitive sanctions does have significant negative consequences.* It may punish, and will deter, the proper exercise of a lawyer's professional responsibility to argue for modification or reversal of existing law. *It will have a chilling effect upon the exercise of the right to appeal.* It will discourage innovation and inhibit the opportunity for periodic reevaluation of controlling precedent. (Emphases added.)

*Orr,* 512 N.E.2d, at 152.

The motion is denied.

AFFIRMED.

RATLIFF, C.J., and GARRARD, P.J., concur.

---

**4.** In both of the cases listed in footnote three, in which damages were awarded, a previous appeal was undisclosed.