McDANIEL v. McDANIEL ET AL.

[No. 30,657. Filed September 15, 1964.]

552

*John H. Beasley,* of Terre Haute, for appellant.

*Mann, Mann, Chaney & Johnson,* of Terre Haute, for appellees.

ACHOR, C. J.—This case, was transferred to this court under Supreme Court Rule 2-23. [See: *McDaniel* v. *McDaniel* (1964), 194 N. E. 2d 753, for opinion of Appellate Court.]

An action for divorce was brought by appellee, John J. McDaniel, against the appellant, Bertha McDaniel, to which appellant filed a cross-complaint for divorce and alimony, in which cross-complaint she particularly asserted that she was entitled to alimony as part of a spendthrift trust which appellee had created in himself. The trust estate thus placed in controversy amounted to approximately $100,000.

In its judgment, the trial court granted appellant cross-complainant a divorce from the appellee. The

court also decreed that appellant was the owner of the household goods and equity in a Florida lot which the parties were purchasing under a contract. There was no evidence on the issue, and the court made no determination, as to the value of this property which it ascribed to the appellant. Further, the court made no finding and entered no judgment as to the disposition of the spendthrift trust which was the primary property issue in the case.

Appellant filed a motion to modify the judgment, which motion requested an award for alimony out of said spendthrift trust and additional attorney fees. The motion to modify the judgment was overruled, as was appellant's motion for new trial.

The questions presented for our determination are: (1) Did the court err in not making a finding and adjudication as to the ownership of the *res* of the spendthrift trust? (2) If his failure constituted error, can it be said that such error was reversible on appeal to this court? (3) Did the court err in its award as to attorney fees? The resolution of these questions requires an understanding of both the facts and the law in the case.

There is no substantial conflict as to the facts. The parties were married on March 9, 1951, and lived together for slightly more than nine years, during which time they "got along well," with only a few "little squabbles." During the first five years, appellant was employed and paid for her clothes and some household furnishings. On June 1, 1960, appellee was injured and lost both his legs. He was hospitalized until February, 1961.

During the first six months of his hospitalization appellant visited appellee almost daily, and he voluntarily

turned over his compensation insurance checks to her for payment of her personal expenses and those incident to the maintenance of their home. However, during this time, appellee became involved with one of his nurses, which fact appellant reported to the hospital. The nurse was then moved off the case and appellee made no further payment toward the support of appellant until ordered to do so by the court after the suit for divorce was filed on May 14, 1962. During this period appellant endorsed and cashed compensation and Social Security disability checks, payable to appellee, without his consent, in the approximate sum of $1,000. She used this money for the payment of back rent, insurance policy loans and back payments on their Florida lot, and for living expenses.

In February, 1961, appellee was released from the hospital. From that time, to and including the date of the trial, he refused to return to his home with appellant, but lived with another woman (a former wife) and slept in the same bedroom with her. Shortly before filing suit for divorce on May 14, 1962, appellee entered into a trust agreement with appellee Terre Haute First National Bank, whereby he placed into a spendthrift trust the approximate sum of $100,000, which was the balance paid in settlement for the injuries which he received in the accident of June 1, 1960. (The total settlement was for $200,000.) At the time of the trial appellee was receiving Social Security disability payments in the sum of $116 per month and $250 per month from the trust estate. It was conceded that he was totally disabled at the time, but there is no evidence as to whether he was totally and permanently disabled. Appellant was working and receiving wages in the sum of approximately $36.00 per week.

Also, it should be noted that the trustee had bought

a home for appellee, in which he and his former wife were living, so that he was not obligated to pay rent. The trustee had also bought appellee a summer home at a cost of $4,000, but the summer home was in appellee's own name.

It is appellee's contention, first, that the granting of alimony in a suit for divorce rests in the sound discretion of the trial court, and much authority can be found in the cases in support of this position. Secondly, appellee asserts that under the facts above enumerated it cannot be said, as a matter of law, that the court abused its discretion. However, appellee's statement is an over-simplification of the rules and propositions of law which are controlling.

Our Alimony statute provides:

> "The court shall make such decree for alimony, in all cases contemplated by this act, as the circumstances of the case shall render just and proper; and such decree for alimony, heretofore made or hereafter made, shall be valid against the husband, whether asked for in the petition or given by the judge on default." Acts 1873, ch. 43, §20, p. 107, being §3-1217, Burns' 1946 Repl.

Under the above statute, a more accurate statement of law would be that, when the court is asked to determine the question of alimony and there is property owned by the husband, thus requiring a determination of that issue, the court, in fixing the amount of alimony, *shall* consider the law and the facts "proper" for it to consider; but, the court having so considered the law and the facts, the fixing of the amount of alimony and the manner of payment is within the sound discretion of the court. Consideration of certain facts and circumstances, however, is not discretionary as a matter of law.

In the present case, an issue was raised as to the right and duty of the court to consider the *res* of the spendthrift trust in the approximate sum of ■ $100,000 in event of the legal separation of the parties. Therefore, on granting a divorce to the appellant it became the duty of the court to make a finding and an adjudication upon that issue. The duty of the court to make this determination was no less mandatory than would be true in an action for an accounting on dissolution of a partnership under circumstances where the ownership of specified property was placed in issue.

In this case the court stated no findings of fact or conclusions of law upon this issue, and his silence upon the issue cannot be accepted as a finding against ■ the claimant, merely because the issue arose out of, and is said to be ancillary to, an action for divorce. This failure on the part of the court was error, and must be treated as reversible error unless other facts in the case clearly demonstrate that, in event the court had stated such findings of fact and conclusions of law upon this issue, such findings and conclusions of law would have been adverse to appellant.

It is asserted by the appellee that appellant was not entitled to participate in the *res* of the spendthrift trust which he created for his benefit because the funds therein were acquired solely as compensation for personal injuries sustained by him to the exclusion of the appellant, and, further, that such funds having been placed in a trusteeship, they were beyond the reach of either the appellant or the appellee, except as the trustee might determine.

Appellee's position in this respect is not tenable. Under our law it is the duty of the husband to sup-

port his wife. Therefore, a wife is denied the right to bring a separate action for her husband's injuries resulting in his loss of earnings. It is therefore considered, in an action for personal injury (not resulting in death), that her damages for loss of earnings are merged with those of her husband. *Burk* v. *Anderson et al. etc.* (1953), 232 Ind. 77, 109 N. E. 2d 407; *Brown* v. *Kistleman* (1912), 177 Ind. 692, 98 N. E. 631; *Miller* v. *Sparks* (1963), 136 Ind. App. 148, 189 N. E. 720.

The rule has been stated as follows:

". . . Furthermore, damages to which the husband is entitled, in a suit for his injuries sustained through another's negligence, are supposed to be full compensation for his injuries, *in which compensation his wife has a benefit*, with the consequence that if the wife is permitted a separate recovery for her loss of consortium resulting from such injuries, there is, in effect, a double recovery for the same matter." [Our emphasis.] 27 Am. Jur., Husband and Wife, §514, p. 114.

For the reasons stated above, appellant had an equitable interest in the *res* of the trust estate which had been established for the nominal purpose of guaranteeing a future income to the appellee, out of which appellant, as his wife, continued to be legally entitled to support.

Furthermore, it is the basic concept of alimony that such payment be made in lieu of a wife's right to the continued support of her husband. In so stating the purpose of the law the writer of this opinion is well aware of the fact that, in the case of *Shula* v. *Shula* (1956), 235 Ind. 210, 214-215, 132 N. E. 2d 612, he stated:

"Alimony is awarded in Indiana for the purpose of making a present and complete settlement of the property rights of the parties. It does not

include future support for the wife, nor is it intended as a medium for providing financial compensation for injured sensitivities during marriage. The primary factor in fixing the alimony is the existing property of the parties. However, other facts which the court may consider are the source of the property, the income of the parties and the nature of the abuse inflicted upon the wife,—particularly if that abuse affected the earning capacity of the wife and would have been the basis for an action in damages except for the fact of the marriage."

This was a proper statement of the law as applied to the facts of that case. A wife is not entitled to compensation merely for wounded sensitivities, such as the remorse or public humiliation which she experiences by reason of her separation and divorce, although she might be entitled to alimony for either mental or physical injury which she suffers as the result of cruel and inhuman treatment, especially if that injury is permanent in nature. Neither is a wife entitled to alimony as a method of future support where substantial alimony in lieu of such support is awarded out of the estate of the husband, as in the *Shula* case, *supra*.

Under our statute it is contemplated that, insofar as it is possible, there be a full and complete separation of the parties at the time of the divorce and to this end it is contemplated that a fixed sum of alimony be determined, based on the present and immediately foreseeable circumstances of the parties, the only exception to this rule being that, as an accomodation to the husband, provision is made whereby a fixed sum of alimony may be paid over a period of time and with security for such payment as the court may determine. See: §3-1217, Burns' 1946 Repl., *supra*, and §3-1218, Burns' (1963 Supp.).

Further, indication as to the right of the appellant to share in this particular trust estate of her husband is manifest in the primary and general rule of law which, from early origin, has been established as providing a guide in determining the amount of alimony to be awarded. It has been universally stated that the primary basis for computing the amount of alimony which an aggrieved wife should receive should be such amount of her husband's separate estate as would leave her in as good a condition financially as she would have been had she been his surviving wife, on her husband's death.

As noted in the *Shula* case, *supra*, this rule is not applicable to property held by the entireties or under agreement of survivorship. Rather, the rule is construed and applied according to the law which existed at the time of its origin when, under the old common law, a wife could own no property in her own name, but was invested with a *dower* interest in her husband's estate, he having taken her property by reason of the marriage. Thus the rule has evolved that, where a wife has no separate estate, an "aggrieved wife" was entitled to compensation out of her husband's estate in lieu of support upon termination of the marital relationship, whether by death or by divorce. See: *Rogers* v. *Rogers* (1910), 46 Ind. App. 506, 89 N. E. 901, 92 N. E. 664.

The parties in their briefs and in argument before this court, gave primary consideration to the contention that the spendthrift trust in controversy was created by appellee for the fraudulent purpose of removing the *res* thereof from the reach of appellant in event of a divorce, which action appellee's conduct was

designed to force upon appellant. The evidence in support of this contention is persuasive.

However, our decision need not rest upon actual fraudulent design. Under the circumstances here presented; such a conveyance is said to be constructively fraudulent if not actually fraudulent. Upon this issue it has been stated:

> ". . . Where, by terms of the conveyance, the husband retains the use of the property transferred, or the grantee agrees to support him [the husband] for life, . . . such conveyance is fraudulent and may be set aside where its effect is to defeat the wife's decree for alimony. . . ." 26 Am. Jur. §197, p. 816.

.Furthermore, as previously noted, appellant had an equitable, if not a legal, interest in the *res* of said estate because of the fact that payment thereof to the appellee was made, at least in part, as compensation for the support of both the appellant and the appellee. Furthermore, the estate was of such a nature that, upon the death of appellee, the *res* thereof would enure to the appellee's estate, of which appellant would have received no less than a one-third (dower) interest had she survived appellee as his wife.

We conclude threfore that the trust estate here in controversy was property of the parties, subject to be considered in determining the amount of alimony awarded, and that it was the duty of the court to state findings of fact and conclusions of law with regard to the ownership and disposition of said estate upon entering his decree for divorce, since this issue was specifically raised by the pleadings in the case.

Having reached this conclusion, it is not necessary

that we discuss other criteria[1] which the court should consider in making his final determination as to the amount of alimony.

Finally, it is contended that the court abused its discretion as to the allowance of attorney fees, in that they were too small. It is true that expert testimony before the court supported the fact of much larger attorney fees than those awarded. However, the reasonableness of attorney fees is also a matter regarding which the judge, being a lawyer, may take judicial notice. Therefore, this court will not disturb the trial court's award as to attorney fees, unless there is a clear abuse of discretion. *Bitner* v. *Bitner* (1950), 228 Ind. 259, 91 N. E. 2d 169. Neither the meager evidence nor the briefs filed in support of the pleadings in this case require a determination that, to this point in the proceedings, there was such an abuse of discretion.

Judgment is therefore reversed as to the amount of alimony awarded in this cause, and the same is remanded for further proceedings upon this issue, consistent with this opinion.

Myers, J., concurs. Jackson and Landis, JJ., concur in the result. Arterburn, J., dissents.

NOTE.—Reported in 201 N. E. 2d 215.

---

1. The primary factor in fixing the amount of alimony is the existing property of the parties, and other factors which may be considered are the amount and source of the husband's property, his financial condition, the income of the parties, and the ability of the husband to earn money. Courts may also consider the separate estate of the wife, the wife's financial condition. The courts may also consider the conduct of the parties toward each other, the wife's innocence of wrongdoing, and the nature of the abuse inflicted on her by her husband. 10 I. L. E. §84, pp. 607-9.