RAY LINTON, JR. *v.* NANCY ANNE LINTON.

[No. 2-374A56. Filed November 5, 1975. Rehearing denied December 10, 1976. Transfer denied June 2, 1976.]

410

412

*Stephen B. Caplin,* of Indianapolis, for appellant.

*Richard A. Young, Young & Young,* of Indianapolis, for appellee.

SULLIVAN, P.J.—Ray Linton, Jr. (Ray) appeals from the judgment below, which found him in contempt of court for breach of an Agreed Modification of Divorce Decree, reinstated the original decree, and ordered him to pay arrearages of alimony and child support. He also appeals the grant of attorney fees on appeal to appellee Nancy Linton (Nancy).

The facts are essentially undisputed. Nancy Linton was granted a decree of absolute divorce from Ray Linton on August 12, 1970. Under that decree, Ray was to pay alimony of $2400.00, payable in monthly installments of $100.00. He was also ordered to pay child support of $70.00 per week, together with hospitalization insurance and the ordinary medical expenses of their two children. Ray paid only one $70.00 support payment, no alimony, and no hospitalization insurance under the original decree.

On September 8, 1971, Nancy and Ray entered into a modification agreement which was approved by the court. Under that agreement, Ray was to pay Nancy $2,200.00 and transfer certain stock to her in full discharge of the support and alimony arrearages accrued as of September 7, 1971.

Of this sum, $1000.00 and the stock was designated as support,[1] and was to be paid immediately. The remaining $1200.00 was designated as alimony and was to be paid in monthly installments of $100.00. The balance of the alimony payments due under the original divorce decree was to be paid in monthly installments of $100.00, beginning a year after the modification agreement went into effect.

The modification agreement also reduced the weekly child support payments to $30.00 per week for each of the two children until September of 1972, when they would be further reduced to $25.00 per week per child.

The agreement concluded with this paragraph, which is the root of the dispute:

"8. It is further agreed by the parties and ordered by the Court that this Agreed Modification of Divorce Decree shall be contingent upon Defendant's performance of the agreed obligation herein and compliance with the Court's orders herein for a period of 12 months from the date of this order; in the event Defendant shall breach the agreement between the parties herein and shall be adjudged in contempt of Court thereon, then this Agreed Modification of Decree of Divorce shall be null and void, and the amounts so paid shall be applied against the amount due under the Decree of Divorce dated the 12th day of August, 1970."

Ray paid the $1000.00 of support arrearages to Nancy and, being unable to transfer the stock to her, sold it and gave her the proceeds. He has paid all of the support under the modification agreement.

He had, however, paid only the first $100.00 alimony payment as of September, 1973, the time of the contempt hearing, making him $1100.00 in arrears under the agreement.

Nancy filed her petition for contempt on October 16, 1972, asking that Ray be adjudged in contempt under the modifica-

---

1. We take judicial notice that on the date of the modification, the stock shares representing payment in part of past due support were listed on the New York Stock Exchange as having a market value of $195.01.

tion agreement, that the agreement be declared null and void, and that Ray be adjudged in contempt of the original decree. Ray filed motions to strike the petition for contempt, for change of venue, and for summary judgment. All were overruled, and the matter was heard in September of 1973. The court determined that Ray had not performed pursuant to the modification agreement, that because of the breach Ray was in contempt of court, that the agreement was therefore null and void, and that Ray's duties and obligations were those ordered under the original decree for divorce. The Court ordered Ray to pay $6910.00 in arrearages, $450.00 in attorney's fees and dental bills upon receipt, and decreed that the original obligations under the divorce decree continue.

Ray perfected an appeal to this court. Subsequently, Nancy petitioned the trial court for attorney's fees on appeal, and fees of $2000.00 were granted. Ray also appeals that determination. The issues on appeal are numerous, and will be enumerated in the course of the opinion.

## I. CHANGE OF VENUE IS NOT MANDATORY IN A CONTEMPT PROCEEDING

Ray maintains that under the Indiana Rules of Procedure, Trial Rule 76, he is entitled to a change of venue upon timely filed application, and that the overruling of his motion was an error of law. However, Rule 76 applies only to civil actions. In Indiana, a civil contempt proceeding is not considered a civil action, and TR. 76 therefor is inapplicable. As the Supreme Court said in *State ex rel. Grile* v. *Allen Circuit Court* (1967), 249 Ind. 173, 231 N.E.2d 138:

"It has been held in our jurisdiction that a defendant in a civil contempt is not entitled to a change of venue. Vol. VI, I.L.E. *Contempt* § 25, p. 28, and *State ex rel. Trotcky* v. *Hutchinson* (1946), 224 Ind. 443, 68 N.E.2d 649, which appears to apply to the case at bar, where it is stated:

'Contempt of court is neither civil, criminal nor equitable for the reason that the right to exercise this power is inherent in all our courts. It is purely judicial power and is not the creature of legislation and is inalienable and indestructible. (Citations) It follows that contempt of court, not being a matter of civil, statutory or equitable nature is not within the terms of said § 2-1402 of our statutes. Furthermore, courts have always been jealous of their inherent judicial powers and due to this fact the great weight of authority is that unless a statute providing for a change of venue specifically gives the right of such change in contempt of court cases, the parties are not entitled to the same. (Citations)' " 231 N.E.2d at 139-40.

There was no error in the denial of Ray's Motion for Change of Venue.

## II. AS A MATTER OF LAW, APPELLANT COULD NOT BE HELD IN CONTEMPT FOR BREACH OF THE MODIFICATION AGREEMENT

Ray's principal argument for reversal is that as a matter of law, he could not be held in contempt for breach of the modification agreement. He urges this result on a number of grounds, one of which we find to be correct.

Ray admits he has failed to pay alimony, but argues that payment of alimony is not a matter enforceable by contempt in Indiana. It is unclear from the record whether Ray was adjudged in contempt for failure to pay support or failure to pay alimony. However, there is ample evidence that he was current on the support payments contemplated by the modification agreement.

It has long been the rule in Indiana that alimony decrees which take the form of a simple money judgment are not enforceable through contempt. *Marsh* v. *Marsh* (1904), 162 Ind. 210, 70 N.E. 154. Enforcement through contempt would constitute imprisonment for debt in violation of Article 1, § 22 of the Indiana Constitu-

tion. Appellee contends that two recent cases, *State ex rel. Schutz* v. *Marion Superior Court, Room No. 7* (1974), 261 Ind. 535, 307 N.E.2d 53 ; and *Wellington* v. *Wellington* (1973), 158 Ind. App. 649, 304 N.E.2d 347 (trans. den. 5/21/74), have sufficiently modified the law to allow contempt as a remedy in this case. *See also State ex rel. Roberts* v. *Morgan Circuit Court* (1968), 249 Ind. 649, 232 N.E.2d 871. She is mistaken in this interpretation.

In *Roberts* and *Schutz,* the Supreme Court drew a distinction between enforcement of alimony which is a simple specific sum money judgment awarded to the spouse, and enforcement of alimony which requires other types of payments or property transfer, e.g., an order for conveyance of real estate, or to pay creditors of the spouse. When the latter type alimony award has been made, contempt may be a proper means of enforcement. Thus in *Roberts,* the husband was ordered to continue retiring the mortgage on the marital home, and his failure to do so resulted in a finding of contempt. While the distinction drawn in *Wellington, supra,* between an alimony money judgment without specific words of command and such a money judgment containing requisite commands, may have been rendered meaningless by *Schutz,* that case did not preclude alimony from taking a form other than a money judgment which would be enforceable by contempt. *Wellington* also suggested that a further distinction might be drawn between alimony as a means of property distribution and alimony as support or maintenance. It is not suggested by the record before us that the alimony award here is other than a specific sum money judgment effectuating a property distribution.

Although appellee here seeks to characterize the alimony payments as performance of a contract and thus within the *Roberts* rule, the payments here involved are under a traditional money judgment alimony award, i.e., Ray was ordered to pay installments on a lump

sum alimony award. Therefore, *Marsh, supra,* limits the available enforcement procedures to those appropriate for a money judgment. The contempt judgment against Ray for breach of the agreement is contrary to law, and is hereby reversed.

## III. THE MODIFICATION AGREEMENT WAS VALID AS TO PROSPECTIVE MODIFICATION OF SUPPORT, BUT WAS PROPERLY VACATED WHEN BREACHED AND THE ORIGINAL DECREE WAS PERMISSIBLY REINSTATED

Ray's appeal necessarily places in question the legal effect of the modification agreement.

### A. The Modification Agreement Validly Modified Support Prospectively

The ambiguity of Paragraph 8 of the modification agreement, quoted in full *supra,* leaves considerable doubt as to the intent of the parties. It is therefore difficult to assess the legal effect of the agreement.

Paragraph 8 provides in part that the agreement ". . . shall be contingent upon defendant's performance of the agreed obligation herein and compliance with the Court's orders herein for a period of 12 months from the date of this order. . . ." It is unclear from this language what effect the modification was intended to have upon the original decree. One possibility is that a one year probationary or test period was being established, during which time the obligations of the original decree were to be temporarily and contingently suspended. If Ray fully complied with the terms of the agreement during that year, the agreement would be effective retroactively, and the modification would date from September 8, 1971. If Ray did not comply, the modification would never go into effect, and his liability would be measured under the original decree. Or, alternatively, it could have been intended

that the original decree was superseded by the modification agreement, but would be reinstated if Ray did not comply with the modification agreement terms.

In order to resolve this ambiguity, it is necessary to consider in general the legal effect of a modification decree. We are concerned here only with the modification of the support order, since the agreement did not alter the amount of alimony which Ray was to pay to Nancy, but only extended the time for payment of the amount due. The agreement therefore did not truly modify the alimony portion of the judgment and was not in contravention of Indiana law at the time of the agreement that judgments for alimony could be modified only upon the death or remarriage of the wife. Ind. Ann. Stat. § 31-1-12-17 (Burns Code Ed. 1973); *Wilms* v. *Wilms* (1973), 157 Ind. App. 583, 301 N.E.2d 249.

In the few jurisdictions which have considered operation of the modification of a support decree, it has been held that the continuing nature of support allows a court to reinstate a decree which has been vacated or modified. *Lodahl* v. *Papenberg* (Mo. 1955), 277 S.W.2d 548 (child support); *Christiano* v. *Christiano* (1945), 131 Conn. 589, 41 A.2d 779 (alimony as continuing duty of husband to support).

Indiana courts have continuing jurisdiction over children during their minority, and have power at all times to modify support orders prospectively. *Zirkle* v. *Zirkle* (1930), 202 Ind. 129, 172 N.E. 192; *Kniffen* v. *Courtney* (1971), 148 Ind. App. 358, 266 N.E.2d 72; Ind. Ann. Stat. § 31-1-12-15 (Burns Code Ed. 1973).[2]

The power to modify includes the power to reinstate orders which have previously been suspended or vacated. The con-

2. The divorce law no longer in effect is cited here because it was in effect at the time the modification was made. The current law also provides that child support orders may be modified or revoked. Ind. Ann. Stat. § 31-1-11.5-17 (Burns Code Ed. 1974 Supp.).

tinuing nature of support proceedings, the probable expectations of the parties, and common sense lead us to conclude that the less strained interpretation of the quoted clause in Paragraph 8 is that the modification agreement was to go into effect immediately, subject to reinstatement of the original decree if Ray failed to perform. Hence Ray's prospective obligations during the period of the agreement were those enumerated in that agreement, and the obligations under the original decree were permissibly reinstated when the court declared the modification agreement null and void.

### B. The Court Correctly Ruled That Ray's Breach Nullified the Modification Agreement

Ray argues that the court below erred in reinstating the original decree because as a matter of law he could not be declared in contempt of the agreement. This argument is founded on the portion of Paragraph 8 of the agreement which reads: ". . . [I]n the event Defendant shall breach the agreement between the parties herein *and* shall be adjudged in contempt of Court thereon, then this Agreed Modification of Decree of Divorce shall be null and void, and the amounts so paid shall be applied against the amount due under the Decree of Divorce dated the 12th day of August, 1970." (Emphasis supplied).

Under the terms of this clause, we cannot say that the trial court erred in declaring the agreement null and void. At the time the agreement was made, the law was well settled in Indiana that failure to pay alimony was not enforceable by contempt. To read paragraph 8 as requiring a judgment of contempt for non-payment of alimony, as Ray would have us do, would mean that the contemplated sanction for breach, i.e., reinstatement of the original decree, is meaningless as to the alimony portion of the agreement. The main rule of construction is to give effect to the intention of the parties by construing the instrument as

a whole, giving effect to every portion, if possible, and always preferring the construction which will render the instrument valid. *Wiltse* v. *Cornell* (1970), 146 Ind. App. 447, 256 N.E. 2d 572. Thus while it would be reasonable to require an adjudication of contempt for non-support, the same is not true for non-payment of alimony.

With respect to the alimony payments, the dual requirement of breach and contempt was probably, but mistakenly, intended to protect Ray from nullification of the agreement if he were to breach only because he was unable to pay, proof of which would prevent a finding of contempt in an action to enforce a support order. *Dissette* v. *Dissette* (1935), 208 Ind. 567, 196 N.E. 684.

The period with which we are here concerned is from September 8, 1971 to October 16, 1972, the time between the entering of the modification agreement order and the time Nancy filed her Petition for Contempt. At the contempt hearing, Ray testified to a very small income during this period, all from his work for a partnership he had entered with his new wife. In 1971 his share of the partnership income was approximately $2000.00, in 1972 approximately $900.00. It is based upon these figures that he argues he was unable to make the alimony payments. However, Ray testified in February, 1972 at a hearing on his petition for modification that he had begun a new job on November 8, 1971, from which he had take-home pay of $1113.00 per month. This testimony was supported at the 1973 contempt hearing. His W-2 form for 1971 shows income of $2489.88 from that new job, and the W-2 for 1972 shows $8921.13.

In reviewing the sufficiency of the evidence of inability to pay, the one seeking to justify his disobedience of the order has the burden of establishing that fact. *Hays* v. *Hays* (1939), 216 Ind. 62, 22 N.E.2d 971; *Carey* v. *Carey* (1961), 132 Ind. App. 30, 171 N.E.2d 487 (transfer den. 6/7/61). Thus, while the court made no ex-

plicit. finding on the matter, there is evidence which would support the trial court's implicit finding that Ray was not unable to pay the alimony for the period in question.

So although Ray could not be held in contempt for failure to meet his alimony obligations (see Section II, *supra*), his conduct was such that the court was justified in finding the agreement breached and in reinstating the original decree.

### C. The Retroactive Forgiveness of Child Support May Be Invalid Depending Upon Facts Not Appearing of Record

The $1000.00 cash sum and the stock shares valued at $195.01 which the modification order directed to be transferred in discharge of the support arrearage fell substantially short of the accrued support amount due as of September 7, 1971. In determining Ray's liability on remand, the trial court must also consider the retroactive decrease of support arrearages, as per the modification agreement.

Indiana decisions have consistently held that parents may not by agreement deprive their children of the support granted by a divorce decree. The custodial parent has been analogized to a trustee of the benefits intended for the child, and the general rule stated that courts may not retroactively reduce, vacate, or annul support orders. *Corbridge* v. *Corbridge* (1952), 230 Ind. 201, 102 N.E.2d 764; *Kniffen* v. *Courtney, supra; Grace* v. *Quigg* (1971), 150 Ind. App. 371, 276 N.E.2d 594. However, to the extent the custodial parent has met the present needs of the child from his own funds, he has fulfilled his "trustee" obligations (as well as his legal obligations as a parent) and is entitled to repayment from the one who was legally obligated by the decree to pay for the support of the child. *McCormick* v. *Collard* (1937), 105 Ind. App. 92, 10 N.E.2d 742. *See also Carson* v. *Carson* (1950), 120 Ind. App. 1, 8, 89 N.E.2d 555.

The one entitled to repayment may also, of course, forgive the debt.

Before granting the reduction of support in the modification agreement of September 8, 1971, the court had a duty to conduct an inquiry as to whether the children had indeed received all of the benefits intended in the original decree. There is nothing of record before us to indicate whether this was done. Unless the contrary is shown on remand, we must presume the court did its duty.

The effect of the modification agreement upon the original decree and order for support and alimony may be summarized as follows: From the time of the divorce, August 12, 1970, until the time of the modification agreement, September 8, 1971, the original decree was in effect. The modification agreement, in effect from September 8, 1971, until it was declared a nullity and the original order reinstated on October 4, 1973, purported to cancel or forgive certain arrearages in accrued support payments and to modify the support decree prospectively. The portion which modified the support payments prospectively was valid and effective, and that portion which cancelled accrued payments is valid unless upon remand shown otherwise. The order of the court on October 4, 1973, reinstated the original decree in its entirety, and the modification agreement ceased to have further effect at that time. In determining Ray's liability to Nancy, the trial court on remand should, of course, give credit for the payments Ray has already made.

## IV. EVIDENCE OF RAY'S FAILURE TO PAY SUPPORT PRIOR TO THE AGREEMENT AND OF HIS DAUGHTER'S NEED FOR ORTHODONTIA WORK WAS PROPERLY ADMITTED

Ray also complains of evidence which was admitted concerning orthodontia work for his daughter, and of his non-

payment of support prior to the modification agreement. He argues that these matters were irrelevant to the only issue under consideration, i.e., his alleged breach of the modification agreement. However, the reinstatement of the original decree and the amounts due thereunder were also at issue. Since medical care and support were included in the original decree, evidence pertaining thereto was relevant and properly admitted.

Ray contends that a proper foundation was not laid for the admission of evidence of the necessity for orthodontia work because it was testified to by Nancy, a lay witness. Nancy testified that she had taken her daughter to an orthodontist, that she and Ray had made arrangements for the orthodontia work to be done, and that it had not been done because Ray had not paid for it. These are all facts from her own experience, to which she was competent to testify. Furthermore, a picture of the daughter was properly admitted into evidence from which the judge could infer the need for dental work. Ray's only objection to the admission of the testimony was that it was not relevant to the matter of contempt under the modification agreement. We have already held that this evidence was relevant as to other issues. Thus there was no error in admitting evidence as to the daughter's need for orthodontia.

## V. THERE WAS NO ERROR IN DENYING RAY'S MOTION FOR SUMMARY JUDGMENT AND IN DENYING HIS MOTION TO STRIKE THE CONTEMPT PETITION

Ray argues that the Contempt Petition should have been stricken or that he should have been granted summary judgment because the verified petition was signed by Nancy's attorney rather than by Nancy herself. He further asserts that he was entitled to summary judgment because the court was without jurisdiction to enter a contempt judgment in the proceeding.

Ray objects to the signing of the Petition for Contempt by Nancy's attorney because a civil contempt action must be sworn to by a complainant on personal knowledge or supported by an affidavit of someone with personal knowledge. *Denny* v. *State* (1932), 203 Ind. 682, 182 N.E. 313. Ray's sole argument is that Nancy, Ray and the clerk of the trial court were the only persons with personal knowledge of the amounts of child support received by Nancy.

We have heretofore noted that Ray was not, in fact, in arrears on the support payments contemplated by the modification agreement. The presence or absence of personal knowledge with respect to such support payments is therefore of no import. In any event, since we have already held the contempt judgment to be erroneous, Ray was not prejudiced.

Since alimony is not enforceable by contempt, Ray asserts that the court erred in denying his motion for summary judgment. Under Indiana Rules of Procedure Trial Rule 56, summary judgment may be granted where there is "no genuine issue as to any material fact and it is shown that the moving party is entitled to a judgment as a matter of law." Had Nancy merely asked for a judgment of contempt for nonpayment of alimony, Ray's argument would be meritorious. However, she asked in her petition that the agreement be declared null and void, and that Ray be held in contempt under the original decree. At the time of the motion for summary judgment there was an issue as to whether under the particular facts and circumstances the agreement had been breached, and there were corollary issues of law and fact concerning the extent of Ray's future liability for support. Summary judgment is appropriate only where there clearly are no factual issues in the case and where the moving party is entitled to judgment as a matter of law. *Tapp* v. *Haskins* (1974), 160 Ind. App. 117, 310 N.E.2d 288.

The court did not err in denying Ray's motion for summary judgment.

Similarly, there was no error in the trial court's denial of appellant's Petition to Strike the Contempt Petition.

## VI. RAY WAS NOT DENIED A FAIR HEARING ON THE PETITION FOR CONTEMPT

Ray alleges that the impropriety of a contempt proceeding for the nonpayment of alimony made the entire procedings so irregular as to deny him a fair hearing. As we have noted, although Ray could not properly be held in contempt for nonpayment of alimony, there were other issues which made it appropriate for the court below to proceed. At that hearing, Ray was ably represented by counsel, was given the opportunity to cross-examine Nancy, and took the witness stand in his own defense. There is no indication that appellant was denied a fair hearing.

## VII. THERE WAS NO ERROR IN THE AWARD BY THE TRIAL COURT OF APPELLATE ATTORNEY'S FEES

This court has previously ruled it appropriate for a trial court in its discretion to award attorney's fees on appeal. *DeLong* v. *DeLong* (1974), 161 Ind. App. 275, 315 N.E.2d 412. In general, perfection of an appeal causes the entire case to be removed to the higher court, and the lower court loses all jurisdiction over the action. *Lake County Department of Public Welfare* v. *Roth* (1961), 241 Ind. 603, 174 N.E.2d 335. Since Nancy filed her petition for attorney's fees after Ray had perfected his appeal, Ray argues that the trial court was without jurisdiction to grant her request.

This issue was squarely presented in *Inkoff* v. *Inkoff* (1974), 159 Ind. App. 239, 306 N.E.2d 132, in which it was held

that a trial court had jurisdiction to grant attorney's fees in such a situation. What was said in *Inkoff* is equally applicable here:

"It is beyond question that a trial court may, in its sound discretion, award appellate attorney's fees to the wife in divorce-related action independent of any statutory provision. [citations omitted] And, such awards have been held to be merely in furtherance of a trial court's decree, and, so, properly made only by the trial court. [citations omitted] Upon examination of the case law in this area, it appears that the rule has developed that the determination of the awarding of appellate attorney's fees to the wife in a divorce-related action, and the amount of such fees, is a matter best decided by the trial court, which is familiar with the fact situation in the particular case. [citations omitted] Inkoff's argument, however is that the trial court had no jurisdiction to act when it did, that is, while the appeal of its judgment was pending. In *State ex rel. Reger* v. *Superior Court, etc.* (1961), 242 Ind. 241, 177 N.E.2d 908, our Supreme Court allowed the trial court in a divorce action to make this determination while the case was pending on appeal, indicating the trial court has continuing jurisdiction to enter such an award. That a similar award was made in the case at bar cannot, therefore, warrant reversal." 306 N.E.2d at 135.

Because the proceeding for attorney's fees is a continuation of the original proceeding, Ray's contention that he was entitled to a change of venue from judge on this limited question also must fail. As we said in Point I, *supra,* an action for contempt is technically neither civil nor criminal, and a defendant is not entitled to a change of venue. *State ex rel. Grile* v. *Allen Circuit Court, supra.*

Ray also asks that the award of attorney's fees on appeal be set aside as excessive. His sole contention in this respect is that there was no evidence presented as to the services to be performed by Nancy's attorney on appeal or the value of those services.

The court in a divorce action may take judicial notice of what a reasonable fee should be, and set the amount without

hearing any evidence. Such an award will not be set aside unless there is a clear abuse of discretion. *McDaniel* v. *McDaniel* (1964), 245 Ind. 551, 201 N.E.2d 215; *Cox* v. *Cox* (1975), 163 Ind. App. 172, 322 N.E. 2d 395. The trial judge here was quite familiar with the case and with the parties. We cannot say that the award of $2000.00 was excessive.

Finally, Ray asks that the award be set aside because he was denied the opportunity to be heard and to present evidence. The primary purpose of the hearing on Nancy's petition for attorney's fees was to hear oral argument on the jurisdiction of the court to grant fees. It was only through misunderstanding of this purpose that Nancy was present; since she was there, the court agreed to allow her to testify as to her ability to pay her attorney. The court was aware of Ray's financial position from the hearing on the modification agreement. Ray has cited no authority to support his allegation of an unfair hearing. While it is true that the court agreed to let Ray testify later and did not do so, we cannot say that that failure amounted to a denial of a fair hearing.

The judgment of October 4, 1973 is reversed insofar as it finds Ray in contempt of the modification agreement, and affirmed as to the nullification of the modification agreement, the award of attorney's fees, and the order to pay dental bills; the order of August 20, 1974 awarding attorney's fees on appeal is affirmed; and the cause is remanded for further proceedings not inconsistent with this opinion.

Buchanan and White, JJ., concur.

NOTE.—Reported at 336 N.E.2d 687.

## OPINION ON PETITION FOR REHEARING

SULLIVAN, P.J.—Appellant Ray Linton, Jr. has filed his Petition for Rehearing asserting, inter alia, that our opinion

on the merits (*Linton* v. *Linton* (1975), 166 Ind. App. 409, 336 N.E.2d 687,) was in error in holding that the trial court correctly denied Ray's Motion For Change of Venue from the County. In that opinion we disposed of the issue upon the sole ground that a civil contempt proceeding is not considered a civil action so as to contemplate a change of venue under TR. 76.

Ray, however, correctly points out that in other portions of our opinion, we noted that the proceeding was not restricted to a prayer for a contempt judgment but that Appellee Nancy Linton sought nullification of the modification agreement and reinstatement of the original divorce decree. It is Ray's position that such issues, additional to the contempt issue, render our reliance solely upon *State ex rel. Grile* v. *Allen Circuit Court* (1967), 249 Ind. 173, 231 N.E.2d 138, an inadequate basis for our determination that the Motion for Change of Venue was properly denied.

We deem it appropriate to resolve hereby any real or apparent inconsistency which might be drawn in this regard from our original opinion.

Insofar as the issues to be resolved by the trial court were not directly related to the matter of contempt, they involved the continuing matter of child support and unpaid alimony. The latter was involved only tangentially, i.e., as to whether Ray had breached the agreed modification order by failing to pay previously ordered installments.

Whether Ray breached the modification agreement and insofar as that determination rested upon his failure to pay alimony, we deem the proceeding but a continuation of the court's previously established jurisdiction.

A court has inherent power to see that it's orders and judgments are carried out. 60 C.J.S., Motions and Orders, § 67. Normally, such power is exercised through the contempt process but contempt need not be the exclusive tool for remedying failures to honor judgments and orders. For ex-

ample, Proceedings Supplemental pursuant to TR. 69, are a means of remedying a failure by a defendant to pay a money judgment. Such proceedings are but a continuation of the original proceeding, and notwithstanding ancient cases which construed the law when proceedings supplemental were deemed separate actions, [See *Burkett* v. *Holman* (1885), 104 Ind. 6, 3 N.E.406] and which held a change of venue from the county to be appropriate, a change of venue from the county is not now contemplated. See 4 Indiana Practice, Harvey & Townsend at p. 469-470.

With respect to matters of child support and modifications thereof it is established that the jurisdiction of the court which entered the original decree is continuing. Changes of venue from the county as to requested modifications are not contemplated nor permitted. *Julian* v. *Julian* (1916), 60 Ind. App. 520, 111 N.E.2d 196. See also *State ex rel. Butcher* v. *Greene Circuit Court* (1964), 245 Ind. 1, 195 N.E.2d 776.

In this instance, the trial court utilized the permissible vehicle (agreed to by the parties and incorporated as an order of the court) of setting aside the modification agreement and reinstating the original decree. The proceeding was not a "civil action" subject to a valid motion for change of venue from the county.

Appellant's Petition for Rehearing is denied.

Buchanan and White, JJ., concur.

NOTE.—Reported at 339 N.E.2d 96.