LEWIS T. WIREMAN *v.* DIANNE M. WIREMAN.

[No. 2-1073A220. Filed March 4, 1976. Rehearing denied April 1, 1976. Transfer denied August 25, 1976.]

C. *Michael Cord, Bayliff, Harrigan, Cord and Maugans,* of Kokomo, for appellant.

*Thomas Stern,* of Chicago, Illinois, *Gerald A. Kamm, Daniel A. Manion, Doran, Manion, Boynton & Kamm,* of South Bend, for appellee.

SULLIVAN, J.—Appellant Lewis Wireman (Lewis) in this divorce action appeals the amending of the original judgment pursuant to appellee Dianne M. Wireman's (Dianne) Motion To Correct Errors, the granting of attorney's fees on appeal to Dianne, and the refusal of the trial court to accept a real property bond as a supersedeas bond to stay the judgment pending appeal. Dianne in a cross-appeal challenges the amount of alimony awarded.

Dianne was granted a divorce from Lewis on April 12, 1973. The decree granted custody of the two children to Dianne with visitation rights by Lewis, and ordered Lewis to pay child support, arrearages in pendente lite child support which had accrued, and alimony in the form of a property settlement to Dianne. The court ordered Lewis to pay a lump sum of $2000.00 (presumably the support arrearages, although it was not specifically designated as such) within thirty days of the order, $2500.00 within a year of the order, and the remainder of the $15,041.00 property settlement in $50.00 weekly installments until the full amount was paid. The court also decreed that "[t]he failure of the plaintiff to so comply with the order of visitation shall operate as a waiver of her right to payment of alimony during the period of such non-compliance."

Dianne then filed a Motion to Correct Errors and filed a supplemental Motion To Correct Errors and for a new trial.

She alleged various errors in the determination of the value of the total assets, and in attaching the contingency to alimony and support.

While Dianne's motions were pending, both parties came back to the court alleging various forms of misconduct by the other, including a charge by Lewis that Dianne had not allowed him visitation. The court overruled most of Dianne's specifications of error but ordered Lewis to pay the support arrearage instanter, and the alimony in one lump sum payment, with the amount constituting a lien upon his property and assets.

Lewis then filed a Motion to Correct Errors objecting to the change in the method of payment of alimony and the removal of the contingency. Ruling on the motion was considerably delayed because of confusion regarding the necessity of a second Motion to Correct Errors when a new judgment is made. *See Davis* v. *Davis* (1973), 156 Ind. App. 176, 295 N.E.2d 837, holding that a second motion was not required. That holding was vacated on rehearing to conform with the Supreme Court's holding in another case that a second motion is required. *Davis* v. *Davis* (1974), 159 Ind. App. 290, 306 N.E.2d 377. Lewis' Motion to Correct Errors was eventually overruled, and this appeal taken.

Following the filing of the appeal, the trial court required Lewis to pay $1500.00 in fees to Dianne's attorneys for the appeal. Lewis filed a Motion to Correct Errors directed to this order which was overruled, and from which Lewis also now appeals. Lewis then sought a stay of the amended judgment pending appeal, but was unable to secure the surety supersedeas bond required by the trial court. The court refused to accept his tender of a real property bond, and hence no stay issued. Lewis now asks this court to reconsider his application for supersedeas bond pursuant to Indiana Rules of Procedure, TR. 62(D).

## I. THE TRIAL COURT DID NOT ERR IN AMENDING ITS JUDGMENT

Lewis mounts a two-pronged attack on the action by the trial court in amending its judgment, arguing that the amendment constituted both a denial of due process and an abuse of discretion.

### A. The Amendment of a Judgment Pursuant to a Motion to Correct Errors Does Not Constitute a Denial of Due Process

Lewis' first argument, that the initial failure of the trial court to rule on his Motion to Correct Errors was a denial of due process, has been mooted by that courts' ruling pursuant to an order of this court following the filing of Lewis' initial brief.

Lewis also argues that the amended judgment deprived him of substantial property interests without a hearing. He alleges that in the period between the original decree and the modification, Dianne violated the initial judgment's visitation order, thus relieving him of the obligation to pay alimony which became due during that time (including the $2000.00 payment which he was to make within 30 days of the original judgment), and vesting in him the right to be free of those payments.

We are not convinced that the words of the original decree freed Lewis entirely of his obligation to pay alimony if Dianne were in non-compliance. The judgment said only that she would waive "her right to payment of alimony during the period of such non-compliance." That does not necessarily mean that she would forfeit her right to ultimate payment of the full amount awarded. The words could be construed to mean only that payments were to be suspended during non-compliance.

Even if we read the decree to mean that alimony installments were to be irrevocably lost during non-compliance, there was no denial of due process in the amendment of the

decree pursuant to Dianne's Motion to Correct Errors. To support his position that such a "divestiture" violated due process, Lewis cites only *Aldridge* v. *Aldridge* (1968), 142 Ind. App. 289, 233 N.E.2d 781, in which this court initially dismissed an appeal on procedural grounds, but subsequently decided it on the merits after being ordered to do so by the Supreme Court. *Aldridge* v. *Aldridge* (1968), 143 Ind. App. 529, 241 N.E.2d 874. The procedural question in the *Aldridge* cases was whether the time within which an appeal had to be filed ran from the granting of summary judgment or from the overruling of the motion for a new trial. We are at a loss to understand Lewis' analogy to these decisions. There is no due process issue in them at all. They merely clarify the Indiana Rules of Procedure. In not providing us with more substantial support for his argument, Lewis comes perilously close to waiving his argument by failure to comply with TR. 8.3 (A) (7). We prefer, however, to dispose of the argument on the merits.

Our own research fails to disclose wherein the amendment of a judgment pursuant to a motion to correct errors constitutes a denial of due process. The very purpose of a motion to correct errors is to advise the trial court of alleged error and give it an opportunity to amend its judgment. *Bud Gates, Inc.* v. *Jackson* (1970), 147 Ind. App. 123, 258 N.E.2d 691; *Stout* v. *Mercer* (1974), 160 Ind. App. 454, 312 N.E.2d 515. The effect of such an amended judgment was discussed by the Supreme Court in *State* v. *Deprez* (1973), 260 Ind. 413, 296 N.E.2d 120. In deciding that a second motion to correct errors directed to the amended judgment was necessary to bring an appeal, the court said:

> "First, there is the question in this instance of what constituted the final judgment referred to in Rule AP. 4. The net effect of the November 4, 1970 entry was dismissal with prejudice, and *would have been final, had it not been for the Motion to Correct Errors* filed on January 4, 1971. If the trial court had simply either granted or denied that Motion

to Correct Errors such step would have constituted the final judgment from which this appeal could have been taken without further ado. Rule AP. 4.

However, *because of the insufficiency of the November 4, 1970 entry in the light of the attack made upon it by the State's Motion to Correct Errors*, the trial court entered a completely new entry of February 3, 1971, pursuant to Rule TR. 52 (B), constituting new findings of fact and a new judgment as authorized further by Rule TR. 59 (E). This new entry for the first time set forth the reasons in fact and in law upon which the trial court's dismissal was based. If they were in error, then a Motion to Correct Errors was clearly necessary. Thus, the February 3, 1971 entry became the final judgment, to which a Motion to Correct Errors, referred to in Rule AP. 4, should have been filed." (Emphasis supplied). 260 Ind. at 420-21, 296 N.E.2d at 124.

If, upon entry of a judgment, property rights were to vest immediately which could be divested only through a full evidentiary hearing, it would severely limit a trial court's board power to alter or amend its judgment prusuant to TR. 52 (B) and TR. 59. *See Board of Commissioners, County of Howard* v. *Kokomo City Plan Commission* (1974), Ind. App., 310 N.E.2d 877, *rev'd. on other grounds* (1975), 263 Ind. 282, 330 N.E.2d 92; *Wadkins* v. *Thornton* (1972), 151 Ind. App. 380, 279 N.E.2d 849. There was no denial of due process by amendment of the judgment.

B. The Trial Court Did Not Abuse Its Discretion in Amending the Judgment

Lewis argues that the trial court abused its discretion in changing the manner in which the alimony award was to be paid because it considered matters outside the record and because the amended judgment is not based upon the facts or upon circumstances of the particular parties.

The only basis Lewis uses for asserting that the court considered matters outside the record is the court's finding in the amended judgment regarding a trust establish for the children:

"1. The irrevocable trust was not made an issue in the divorce action. The trust was for the benefit of the minor children and was not to defendant's benefit. The trust is now a matter of court action in Cause No. 73CH4052 in the Circuit Court of Cook County, Illinois, County Department —Chancery Division."

Although there was testimony concerning the establishment of the trust offered at trial, the pending Illinois action was not before the court. Lewis does not complain about the refusal to consider the trust. That refusal is beneficial to him. Rather, he uses the finding as a springboard to speculate that the court may have considered other things outside the record to his prejudice in changing the alimony award.

Upon appeal, the complaining party must specify the precise errors warranting reversal. All reasonable presumptions are indulged in favor of the trial court, and the appellate court will presume nothing in favor of the appellant to sustain his alleged errors. *First National Bank* v. *Penn-Harris-Madison School Corp.* (1970), 255 Ind. 403, 265 N.E.2d 16; *Cox* v. *Cox* (1975), 163 Ind. App. 172, 322 N.E.2d 395. Lewis points to nothing to indicate that the trial court was influenced by matters outside the record in changing the method of payment of alimony, nor can we find anything. We will not reverse the trial court on such speculative grounds.

Lewis also argues that the testimony at trial indicated that Dianne was not going to comply with a visitation order. Thus, he contends, the court initially exercised its discretion wisely in making alimony contingent upon compliance, but abused its discretion in removing that condition. In reviewing the trial court's judgment, this court will not weigh the evidence, but will consider it in the light most favorable to appellee. *Cox* v. *Cox, supra; Hibbard* v. *Hibbard* (1974), 161 Ind. App. 422, 315 N.E.2d 731. The standard for reviewing a divorce decree for abuse of discretion was set out in *Boshonig* v. *Boshonig* (1971), 148 Ind. App. 496 at 499, 267 N.E.2d 555 at 556-7:

"We will not weigh the evidence, but will consider it in a light most favorable to the appellee. The decision of the trial court, relative to property rights, alimony, and other allowances are reviewable for a determination of an abuse of judicial discretion, and for that purpose only. The judicial discretion in a case of this nature is an exercise of official conscience, not arbitrarily, willfully, or passionately exercised, but based upon the facts and circumstances of the particular case with regard to what is right and equitable under the applicable law and to the end of a just result. The appellant's responsibility is to show a clear abuse of judicial discretion. [Citations omitted]. The fact that circumstances would have justified a different result by another trial court than that reached by the trial court in this case does not warrant this court in substituting its Judgment for that of this trial court. [Citations omitted]."

Our review, therefore, is necessarily tied to the facts of this particular case. It should be noted that it was initially within the scope of discretion of the trial court to choose between periodic alimony payments or a lump sum payment. Ind. Ann. Stat. § 31-1-12-17 (Burns Code Ed. 1974);[1] *Boshonig* v. *Boshonig* (1972), 152 Ind. App. 688, 285 N.E.2d 684, and to make payment of alimony contingent upon compliance with the visitation order. *Marsico* v. *Marsico* (1972), 154 Ind. App. 436, 290 N.E.2d 99. Thus we must decide whether in selecting the mode of payments which it did, the trial court's decision was "based upon the facts and circumstances of the particular case with regard to what is right and equitable under the applicable law and to the end of a just result." *Boshonig* v. *Boshonig, supra,* 267 N.E.2d at 556-557.

Review of the record reveals little to support Lewis' statement that the testimony showed that Dianne was not going to comply with a visitation order. Two witnesses testified that Dianne did not think Lewis was a good influence on the children, and that she planned to petition that he be

---

1. While the current statute dealing with property settlement, enacted after this divorce became final, does not explicitly allow such a choice, it would still be permissible under the broad discretion allowed by that statute. Ind. Ann. Stat. § 31-1-11.5-11 (Burns Supp. 1975).

denied visiting privileges. Nothing was offered to show she would not allow visitation if it were ordered.

Nor does the record reflect that the trial court originally made alimony contingent because the evidence showed Dianne was not going to comply with the visitation order. Although there is no indication in the original order or findings of the court's reasons for ordering the contingency, later statements by the court, together with the actions of the parties, offer some explanation of the two judgments. In ruling on Dianne's Motion to Correct Errors, the court said:

"3. Payment of alimony by defendant being made contingent upon plaintiff complying with order for visitation rights of defendant with his children was considered by the Court in an effort to prevent the violations and citations being constantly before the Court."

Later, in denying Lewis' motion for a stay pending appeal, the court found the following:

"2. Defendant failed and refused to comply with order of the Court on final judgment to pay the support in arrearage.

3. Defendant failed and refused to comply with the order of the Court upon judgment regarding property division and payment of alimony.

4. Plaintiff filed her Motion to correct errors.

5. The Court amended the Judgment to require compliance by the defendant. The amendment required defendant to pay the support arrearage for the minor children instanter. The Amended Judgment required the defendant to pay the alimony in one lump sum payment instead of installment payments."

The record in this case is filled with petitions by both parties for restraining orders and for orders to compel various actions by the other, and for motions to show cause why the other should not be held in contempt for failure to comply with such orders. As often happens in divorce actions, the court here was made the referee in

the bitter battles between the spouses. It is apparent that the trial court originally made the contingency in an effort to force Lewis and Dianne to police themselves, and thus end the recurrent bickering before the court. The futility of that effort was almost immediately apparent. The parties were back before the court within two weeks of the divorce complaining of each other's behavior. We find no abuse in the court's abandonment of its original plan and in its decision that it would be more equitable if alimony were paid in a lump sum. There was no error in the trial court's modification of its judgment pursuant to Dianne's Motion to Correct Errors.

## II. LEWIS' APPLICATION FOR SETTING OF SUPERSEDEAS BOND IS DENIED

Upon Lewis' application for a stay and setting of supersedeas bond pending appeal, the trial court fixed corporate bond at $20,000.00. Lewis was unable to obtain such a bond, and tendered instead a real property bond in the amount of $45,000.00, listing his brother and his brother's wife as sureties. This bond was rejected by the trial court, and hence no stay issued. In his brief before this court, Lewis has asked that we exercise our discretion pursuant to TR. 62(D)(1) and approve this tendered supersedeas bond.

To approve bond and issue a stay at this point would be a futile gesture. The appeal has been decided. The proper procedure would have been to file a separate application for setting of bond and issuance of a supersedeas order, as was done in *Board of Commissioners of County of Madison* v. *Midwest Associates, Inc.* (1969), 253 Ind. 551, 249 N.E.2d 740. Lewis' application is denied.

## III. THERE WAS NO ERROR IN THE AWARD OF ATTORNEY FEES

Finally, Lewis argues that the award of $1500.00 attorney's fees on appeal constituted an abuse of discretion. In a some-

what scattered fashion, he argues that there was no showing of the propriety of or necessity for fees; that Dianne was trying to bankrupt him by employing a number of different attorneys; and that the award put an undue amount of financial pressure on him.

The decision to award attorney's fees on appeal and the appropriate amount of such fees is within the discretion of the trial court. *Linton* v. *Linton* (1975), 166 Ind. App. 409, 336 N.E.2d 687; *Inkoff* v. *Inkoff* (1974), 159 Ind. App. 239, 306 N.E.2d 132. Its award will not be set aside unless a clear abuse of discretion is shown. *Linton* v. *Linton, supra; Hibbard* v. *Hibbard, supra.* Lewis points to *Stigall* v. *Stigall* (1972), 151 Ind. App. 26, 277 N.E.2d 802, and *Mathews* v. *Mathews* (1972), 151 Ind. App. 70, 278 N.E.2d 325, as support for his argument that a request for attorney fees by a spouse who hires a number of attorneys should be disregarded in whole or in part. While those cases do say that a spouse may not run up unnecessary fees and expect the court to order total reimbursement, that principle has no application here. While Dianne did employ a number of attorneys at the trial level, there is no evidence or complaint of excessive fees there. The $1500.00 award made when Lewis initiated this appeal was a flat, lump sum. No request has been made for more. The trial court was familiar with the action, the amount of work which would be required on appeal, and the parties' financial situations. We can not say that $1500.00 was an excessive amount.

## IV. THE TRIAL COURT SHOULD HAVE CONSIDERED THE PROPERTY PLACED IN THE CHILDREN'S TRUST IF FRAUDULENTLY TRANSFERRED

In her cross-appeal, Dianne argues that the trial court erred in determining the total value of the marital assets because it excluded property which Lewis transferred to an irrevocable trust for the benefit of the children just prior

to the filing of Dianne's complaint seeking a divorce. In its amended judgment, the trial court found:

"The irrevocable trust was not made an issue in the divorce action. The trust was for the benefit of the minor children and was not to defendant's benefit."

Dianne does not suggest that the trial court abused its discretion, but rather that it failed to exercise its discretion at all, and thus committed reversible error. She relies upon *McDaniel* v. *McDaniel* (1964), 245 Ind. 551, 201 N.E.2d 215, wherein the Supreme Court remanded the case to the trial court for inclusion in the marital assets the *res* of a spendthrift trust set up by the husband just prior to his filing for divorce. In doing so, the Court said:

"In the present case, an issue was raised as to the right and duty of the court to consider the *res* of the spendthrift trust in the approximate sum of $100,000 in event of the legal separation of the parties. Therefore, on granting a divorce to the appellant it became the duty of the court to make a finding and an adjudication upon that issue. The duty of the court to make this determination was no less mandatory than would be true in an action for accounting on dissolution of a partnership under circumstances where the ownership of specified property was placed in issue. In this case the court stated no findings of fact or conclusions of law upon this issue, and his silence upon the issue cannot be accepted as a finding against the claimant, merely because the issue arose out of, and is said to be ancillary to, an action for divorce. This failure on the part of the court was error, and must be treated as reversible error unless other facts in the case clearly demonstrate that, in event the court had stated such findings of fact and conclusions of law upon this issue, such findings and conclusions of law would have been adverse to appellant." 245 Ind. at 557, 201 N.E.2d at 217-218.

Lewis correctly argues that *McDaniel* is distinguishable, since it involved a spendthrift trust for the benefit of the husband, while he (Lewis) set up an irrevocable trust for the benefit of the children, and thus no longer retains any interest in the property. However, while the nature of the husband's

interests are quite different in the two cases, the Court in *McDaniel* focused primarily on the wife's interest in the property transferred and the intent of the husband in transferring it. It first found that the wife had an equitable interest in the property which became the *res* of the trust, and then that there was evidence of constructive fraud in the establishment of the trust.

Indiana law has long recognized that property transferred by a spouse to defeat the other spouse's claim to alimony or collection of alimony is fraudulent and may be set aside. *State ex rel. AFNB etc.* v. *Spencer Cir. Ct.* (1961), 242 Ind. 74, 175 N.E.2d 23; *Schmeling* v. *Esch* (1925), 84 Ind. App. 247, 147 N.E. 734; *DeRuiter* v. *DeRuiter* (1901), 28 Ind. App. 9, 62 N.E. 100. *See also Kuhn* v. *Kuhn* (1955), 125 Ind. App. 337, 123 N.E.2d 916. As this court said in *Schmeling* v. *Esch, supra:*

> "There is another reason why appellee was entitled to have the conveyance set aside. In determining the amount of alimony to which she was entitled in the event of divorce, it was the right and duty of the court to take into consideration the value of Esch's estate. [Citations omitted] To this end, appellee was entitled to have all of the property of her husband uncovered before the court." 84 Ind. App. at 251, 147 N.E. at 735.

In discussing constructive fraud, the Court in *McDaniel, supra,* held that where a spouse retains use of transferred property or the grantee agrees to support the grantor spouse for life, and the effect of the transfer is to defeat the other spouse's alimony decree, the conveyance is constructively fraudulent and may be set aside. *See also,* 41 Am. Jur.2d *Husband and Wife* § 210.

An equitable property settlement can not be made unless all of the property in which the spouses hold an interest is considered by the court. *Hardiman* v. *Hardiman* (1972), 152 Ind. App. 675, 284 N.E.2d 820, 824. The trial court here apparently did not consider the

trust because neither Dianne nor Lewis had a present or vested future interest in the proceeds. *Compare Loeb* v. *Loeb* (1973), 261 Ind. 193, 301 N.E.2d 349 in which a husband's vested trust interest subject to a condition subsequent was held properly excluded because there was no present interest of possessory value and *Stigall* v. *Stigall, supra,* in which it was held that a wife's vested future right to a pension fund were properly set off against the property settlement award made to her.

The trial court, however, did not consider Dianne's argument that Lewis' alleged fraud in transferring the assets served to draw them back into the marital estate for consideration in making a property settlement. The evidence offered at trial shows a factual dispute as to whether the transfer was fraudulent as to Dianne. The trust was established on September 8, 1972, the day Dianne told Lewis she was filing for divorce, and a month before the complaint was filed. Dianne's mother testified that on that day (September 8), Lewis threw the trust agreement at Dianne, saying that "he had made an irrevocable trust so that the money would all go to the children and she would never touch a penny of it," and, further, that "he would never give her any money under any circumstances, the only thing he would pay was child support which in Indiana law is $50.00 and she wouldn't get any more." This testimony was corroborated by Dianne. The attorney who drafted the trust, on the other hand, testified that he and Lewis had had at least six conversations regarding setting up such a trust over the three years prior to the trial. The reasons Lewis gave to this attorney for wanting to establish the trust were, "[n]umber I he was concerned about the inability of his wife to manage money, Second, would be in order to obtain professional management of the money, investments, common trust, things of that nature by the bank and third for the purpose of removing the assets from the taxable estate upon his death." This unresolved factual question should have been decided by the

trial court, and a determination made as to whether Dianne's interest was fraudulently defeated. We note that Dianne did not ask that the trust be set aside, but only that an equivalent of the assets transferred be included in a determination of the total marital assets. Because the trust is for the benefit of the children, we see no reason why the trial court, if it determines the transfer to have been made in fraudulent derogation of Dianne's interest in marital assets, could not in the exercise of its equitable discretion, leave the trust intact but consider the transfer with respect to possible modification of the property settlement alimony award.

The judgment of the trial court is affirmed in all respects except as to the exclusion from consideration by the trial court of the assets transferred to the trust. The cause is remanded for a determination from the facts of record whether there was a fraudulent transfer of assets by Lewis. If the court does find that the transfer was fraudulent, it must then further decide whether in the sound exercise of its discretion an adjustment should be made in the property settlement award.

Buchanan, P.J. and White, J., concur.

NOTE.—Reported at 343 N.E.2d 292.